OPINION OF THE COURT
Norman J. Felig, J.
This is a motion brought by the Attorney-General, pursuant to CPL 240.50, for a protective order amending and modifying this court’s order, dated December 27, 1983, which, inter alia, granted the defendants discovery and inspection of drums and samples therefrom which allegedly contained hazardous waste material, on the ground that there is a “danger to the integrity of physical evidence” (CPL 240.50, subd 1) and, pursuant to CPL 240.40 for reciprocal discovery in accordance with the provisions of CPL 240.30.
For the reasons hereinafter set forth, this motion is granted.
The defendants are charged with unlawful dealing in hazardous waste in the first degree (two counts) and unlawful dealing in hazardous waste in the second degree (one count). It is alleged that the defendants transported hazardous waste from New Hampshire into New York. The *649 hazardous wastes are stored at the Coty Warehouse, 580-GOO Richmond Terrace, Staten Island, New York, and were sampled by the Department of Law on June 14, 1983. Thereafter, at the defendants’ arraignment, the Attorney-General provided the defendants’ attorney with the results of the sampling. The defendants served a demand and a supplemental demand to produce to which the Attorney-General replied. Thereupon, the defendants requested access to the Coty Warehouse so that they could conduct their own sampling of the materials involved. The Attorney-General agreed to permit access provided the defendants submitted their sampling protocols so as to ensure that the material would not be contaminated or destroyed and safety and health risks could be avoided. Apparently, a tentative date for sampling of the materials had been set. The defendants advised the Attorney-General that a New Hampshire laboratory would contact the Attorney-General’s technical staff with the sampling protocols which would comply with “RCRA [Resource Conservation and Recovery Act] standards”. The request for the protocols not having been complied with, either the defendants or the laboratory was advised that the sampling would not be conducted unless the protocols were provided.
Thereafter, the defendants, by order to show cause, moved for an order demanding access to and discovery of the drums and samples taken therefrom. Upon the Attorney-General’s failure to respond on the call of the calendar, the motion was granted by default and an order was signed, dated December 27, 1983.
The Attorney-General brought on the instant motion for a protective order and reciprocal discovery claiming, inter alia, that this court’s order of December 27, 1983 “fails to provide for adequate protection of the People’s evidence, fails to provide health and safety safeguards for the sampling”. In support of his application, the Attorney-General has submitted and relies upon an affidavit of Gregory Shkuda, an environmental scientist with the New York State Environmental Protection Bureau, in which he states that unless proper sampling protocols and procedures are followed there is a danger of contaminating the material being sampled which “can result in the invalidity *650 of the sample taken and possibly, result in the inability to obtain a valid sample from the contaminated material”. He further states that improper sampling protocols or procedures “can result in safety and health risks to anyone participating in, or in the area of, the sampling”.
In opposing this application, the defendants rely upon the conclusory statements of their attorney who claims that the underlying basis for the Attorney-General making this application is a “mere pretext” to gain a strategic advantage. He argues that because the samplings will be performed by qualified chemists, who must comply with the procedures mandated by Federal and State regulations, their expertise and experience will minimize any risk to human health or the integrity of the evidence. Consequently, there is no real threat of contamination or danger associated with making the physical evidence available to the defendants for independent sampling. The defendants have neglected to identify those Federal or State regulations to which he referred, failed to state the nature of the procedures mandated by them or how those procedures will minimize the risk to human health or the integrity of the evidence. On the other hand, the Attorney-General in its reply to the defendants’ supplemental demand to produce, set forth a description of the procedures that were followed in the taking of its own samples.
It should be noted that the Attorney-General does not oppose the defendants’ right to discovery of the drums and samples. His concern is that proper supervision, safeguards and procedures be utilized by them in conducting their discovery and independent testing so that the integrity of the contents of the drums and its samples are not compromised, contaminated or destroyed. GPL 240.50 permits the court to issue a protective order limiting, conditioning or regulating discovery for good cause, including danger to the integrity of physical evidence or a substantial risk of physical harm. The Attorney-General demonstrated “good cause” for this court to modify its prior order, dated December 27, 1983, and to limit, condition and regulate the defendants’ discovery of the drums and samples to protect against contamination or destruction of the prosecution’s evidence.
*651 In People v White (40 NY2d 797, 798), the Court of Appeals held that defendants “charged with a dangerous drug offense must normally be accorded the right, with appropriate safeguards and under the supervision of the court, to pretrial discovery with respect to the alleged dangerous drug, including the right to make independent tests as to weight and composition.” In discussing the nature and extent of pretrial discovery and testing, the Court of Appeals stated that “Any pretrial discovery and testing should, of course, be conducted under the supervision of the court and with safeguards, analogous to those observed by the prosecution in its own testing, to protect against contamination or destruction of the evidence. The particular safeguards must necessarily be designed on an ad hoc basis in light of the nature, form, quantity and other characteristics of the substance in question and with recognition of other material circumstances of the individual case.” (Supra, p 799.)
This court perceives no substantive distinction between pretrial discovery permitted defendant respecting the alleged drugs in the White case and the pretrial discovery to be accorded the defendants respecting the nature of the alleged hazardous waste in this case. The defendants have the right to discover and conduct tests with reference to the contents of the drums and the samples taken therefrom in order to determine whether its contents constitute “hazardous waste” as defined in ECL 71-2702 and whether the aggregate amount of the alleged hazardous waste allegedly transported into New York State amounts to the statutory minimum as set forth in ECL 71-2717. (People v Moore, 60 AD2d 477.) This court is satisfied that there is a danger of contaminating or destroying the integrity of the material which is to be tested or there is a safety or health risk to anyone participating in or in the area of the sampling if proper protocols and procedures for testing are not followed.
Therefore, the motion is granted to the extent that the first decretal paragraph of the order, dated December 27, 1983, is amended as follows:
After the words “samples taken from said drums”, the following is added:
*652 “provided that
“a) the defendants furnish the Department of Law of the State of New York the sampling protocols and procedures they intend to use at the Coty Warehouse;
“b) personnel of the state of New York be present and supervise the taking of the samples; and
“c) the Attorney General is granted reciprocal discovery pursuant to CPL Section 240.40 (2) (a).”