OPINION OF THE COURT
Michael D. Stallman, J.
This defendant’s discovery motion requires the court to determine an issue of first impression under the recodified criminal discovery statute and raises significant constitutional and evidentiary issues. Does a defendant have an absolute right to demand production and independent testing of blood samples taken from his person? Must movant first demonstrate that such samples or test results would be admissible at trial?
BACKGROUND
Defendant is charged with two concurrent counts of driving while intoxicated. (Vehicle and Traffic Law § 1192 [2] [over .10 per centum blood alcohol content] and [3] [common-law intoxication].) Upon his arrest, defendant submitted to a blood test. Toxicological analysis revealed a blood alcohol content of .23%.
Defendant has moved, approximately seven months after the test, for an order directing the People to produce blood samples retained by the Chief Medical Examiner, for indepen *55 dent testing by an unnamed defense expert. In response, the People claim that defendant has not demonstrated the relevancy of retesting a retained blood sample. The People contend that proof of relevancy is a condition precedent to ordering disclosure and testing, and that defendant should be held to have the burden of proof. The People assert that the blood alcohol content of a retained sample may have diminished with the passage of time, thus rendering the sample and any test now performed on it unrepresentative of the defendant’s condition at the time of the incident. In sum, if the result would be invalid, and thus inadmissible at trial, discovery and testing would be both futile and unnecessary. Consequently, the People contend that the court must first determine whether the retained samples have been stored under the same conditions as when first analyzed, and whether blood alcohol content in stored samples significantly changes over the course of time.
APPLICABLE STATUTES
Prior to the adoption of the current criminal discovery statute in 1980 (CPL art 240, as added by L 1979, ch 412), the defense had no clear statutory right to inspection and independent testing of a retained specimen of the defendant’s blood. (See, CPL former 240.20; L 1970, ch 996.) The court then had the discretion to order discovery, inter alla, of scientific test reports and any other property upon a showing by the defendant that the items sought were "material” to the preparation of the defense and that the request was otherwise "reasonable”. (CPL former 240.20 [3] [a], [b].) The old law clearly placed on the moving defendant the burden of demonstrating entitlement to the relief. (See, Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL art 240, at 466 [1971 ed].) The former statute did not specifically mention blood, fluid or tissue specimens recovered from the defendant’s body. Indeed, the few cases which granted such discovery did not rest on any statutory or constitutional authority; rather, they appear to have been grounded on the courts’ general, supervisory power to assure fair procedure. (People v North, 96 Misc 2d 637 [Amherst Town Ct, Erie County] [independent test of blood samples]; People v Inness, 69 Misc 2d 429 [Westchester County Ct] [test reports]; People v Seaman, 64 Misc 2d 684 [Dist Ct, 1st Dist, Suffolk County] [test reports; independent test of remaining sample granted *56 conditionally upon proof that the chemical composition of the sample had not changed].)
In contrast, the recodified statute gives the defendant automatic access to a broad range of designated property, upon demand. (CPL 240.20 [1]; L 1979, ch 412, as amended.)[1] In order to effect judicial economy and encourage cooperation between counsel, the statute eliminates any requirement that the defendant first seek permission from the court or demonstrate any need or basis. Moreover, discovery is available whether or not the prosecution intends to use such property or offer it as evidence at trial.
Among such property, the statute lists:
"(f) Any other property obtained from the defendant or a codefendant to be tried jointly; [and] * * *
"(h) Anything required to be disclosed, prior to trial, to the defendant by the prosecutor, pursuant to the constitution of this state or of the United States.” (CPL 240.20 [1].)
"Property” was specifically redefined to mean: "[A]ny existing tangible personal or real property, including, but not limited to, books, records, reports, memoranda, papers, photographs, tapes or other electronic recordings, articles of clothing, fingerprints, blood samples, fingernail scrapings or handwriting specimens, but excluding attorneys’ work product.” (CPL 240.10 [3].)
The statute recognizes that the court must have an equivalent, broad power to intervene, to appropriately regulate *57 discovery according to the unique circumstances of each case. CPL 240.50 (1) provides as follows: "The court in which the criminal action is pending may, upon motion of either party, or of any affected person, or upon determination of a motion of either party for an order of discovery, or upon its own initiative, issue a protective order denying, limiting, conditioning, delaying or regulating discovery pursuant to this article for good cause, including constitutional limitations, danger to the integrity of physical evidence or a substantial risk of physical harm, intimidation, economic reprisal, bribery or unjustified annoyance or embarrassment to any person or an adverse effect upon the legitimate needs of law enforcement, including the protection of the confidentiality of informants, or any other factor or set of factors which outweighs the usefulness of the discovery.” This section essentially codifies the court’s customary supervisory authority over evidence, attorneys and litigants (see, People v White, 40 NY2d 797, 799 [decided before statute adopted; power to craft protective order assumed, without citation or analysis]; see also, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 240.50, at 414). Such discretion must be considered an inherent judicial power.[2] (See generally, Langan v First Trust & Deposit Co., 270 App Div 700 [4th Dept]; Evans and Stallman, Deferred Sentence: Common Law Alternative to Judge’s Dilemma, NYLJ, Nov. 24, 1982, at 6, cols 1, 2.)
Thus, the new law effectively established a presumption favoring discovery. As to all of the broad categories itemized in CPL 240.20 (1), the defense is entitled to disclosure on demand.[3] Access to such material is a clear statutory right enforceable by court-imposed sanctions, either sua sponte or by motion. (See, CPL 240.70, 240.40 [1].) There is no requirement that the defendant demonstrate materiality and reasonableness. Rather, the burden is placed on the prosecutor, who must demonstrate that the matter sought is either (1) not *58 designated property under CPL 240.20 or otherwise not subject to disclosure; or (2) for good cause, ought not to be disclosed. Motion practice is therefore limited to applications by the defendant to compel disclosure, enforce prior orders and impose sanctions, and by the prosecution to applications for protective orders to limit, stay or condition disclosure. Only with respect to property not embraced by the broad ambit of CPL 240.20 (1) does there remain a requirement that the defendant first make a showing of materiality and reasonableness. (CPL 240.40 [1] [c].)
In light of the broad statutory scheme, the specific inclusion of blood samples in the definition of property makes clear that the Legislature intended that such matter be freely available to the defense. Accordingly, movant is presumptively entitled to the relief sought as a matter of right. The People have the burden of demonstrating that the requested relief should be denied. Given the strong public policy in favor of disclosure and the constitutional considerations discussed infra, that burden is a heavy one.
EVIDENTIARY CONSIDERATIONS
The People seductively argue that testing the remaining blood sample would be pointless unless its relevancy were established. If the test result would not be relevant, it would not be admissible at trial.
"Relevancy” is frequently used to embrace two discrete evidentiary concepts: relevance and materiality. (E.g., Fed Rules Evid rule 401; Proposed NY Code of Evidence § 401, comment, at 44 [1982]; see, Schmertz, Relevancy Under Rule 401: A Dual Concept, 14 Litigation, No. 3, at 12 [spring 1988]; 1 Weinstein, Evidence U 401 [01] et seq.) In the narrow, traditional sense, evidence is relevant when it has a logical tendency to establish the general proposition for which it is offered. (McCormick, Evidence § 185 [3d ed] [denoting this concept "probative value”]; Richardson, Evidence §4 [Prince 10th ed]; see also, Fisch, New York Evidence, §3 [2d ed].) Evidence is considered material when it tends to prove or disprove the existence of an ultimate fact at issue in the case. (Compare, McCormick, op. cit.; Richardson, op. cit., with Fisch, op. cit.)
"Materiality” is also used to denote two different concepts. In addition to its evidentiary meaning, it is used as a term of art in the context of pretrial discovery, in both civil and *59 criminal practice. In the discovery context, property or information is considered material to a party when it is, or may be, significant and useful to proper case preparation. (See, Allen v Crowell-Collier Publ. Co., 21 NY2d 403; Siegel, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR C3101:5, C3101:6, at 11, 12; 3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3101:07.) It need not be admissible at trial or material in the evidentiary context. (See, Siegel, op. cit., CPLR C3101:7, at 12.)
In the instant evidentiary context, a second blood test would be relevant if it were capable of revealing the blood’s alcohol content by weight at the time the sample was taken. The result would be material, since it would inferentially establish the blood alcohol content at the time of the incident, an element of one of the two counts charged (Vehicle and Traffic Law § 1192 [2]). Moreover, it could be considered, if accompanied by appropriate expert testimony, along with the other indicia of common-law intoxication, in support of the second count (Vehicle and Traffic Law § 1192 [3]). It is undisputed that the standard testing procedures, when properly performed within days or weeks of taking the sample, produce a generally accepted result to a reasonable degree of scientific certainty. What is disputed is whether, due to evaporation, physical decomposition, oxidation, bacterial activity or other process, the sample has substantially changed during the intervening time. If so, any test not yet conducted could be irrelevant under each sense of the term: It would have neither probative value nor relationship with any issue in this case.
It is therefore necessary to determine whether the remaining blood sample is authentic, i.e., if it retains the same physical and chemical characteristics as the sample previously tested. (See, McCormick, op. cit., § 202, at 603.) First, if the sample has dried, coagulated or decomposed, it might be physically impossible to determine the blood alcohol content. Second, assuming that a test were still practicable, it would reveal nothing of scientific or legal value if the sample were no longer authentic. Under those circumstances, such results would be entirely inadmissible at trial. Accordingly, this question must be determined by the court. If, however, the court were to find that the remaining sample had undergone no appreciable change, and that repetition of the test would be scientifically practicable, test results might well be admissible subject to cross-examination as to weight, particularly if scientific experts were in disagreement.
*60 This question cannot be resolved without resort to scientific expertise. This Judge is not a trained chemist or toxicologist. The parties have not offered affidavits of scientific experts or any data concerning the method of storage. An examination of relevant scientific literature reveals considerable variation in analytical methodology, storage technique and research findings making comparison difficult. (See, Chang, Smith, Walkin, Reynolds, The Stability of Ethyl Alcohol in Forensic Blood Specimens, 8 J of Analytical Chemistry 66 [Mar.-Apr. 1984]; Brown, Neylan, Reynolds, The Stability of Ethanol in Stored Blood, 66 Analytica Chimica Acta 271-283, 285-290 [1973].) Resort to the judicial notice doctrine is thus appropriate only to a limited extent. Consultation of the available literature establishes two things: First, a fact-finding hearing must be held before the court can determine the legal questions of authenticity and admissibility; second, since the passage of time may well be outcome-determinative, any further delay of testing pending investigation, hearing and determination could render the inquiry academic and prejudice the interests of justice.
It is therefore abundantly clear that the prosecution has not met its burden of overcoming the statutory presumption favoring discovery upon demand. It is no accident that the discovery statute does not link disclosure to admissibility at trial. The evidentiary and discovery concepts are distinct and independent of each other, as well they must be, given the differing purposes of the rules of evidence and the rules for discovery. The rules of evidence are intended to limit proof, so as to bar the introduction of unprobative, unreliable or unfairly prejudicial evidence at trial. In contrast, the rules of discovery are intended to expand the parties’ sources of pretrial information to make available matter which could aid proper case preparation or lead to the uncovering of admissible evidence or impeachment material. Since admissibility is not a precondition for discovery, speculative inadmissibility cannot alone constitute a valid reason for withholding discovery. Discovery, therefore, need not await a determination of admissibility.
CONSTITUTIONAL CONSIDERATIONS
Due process, in its broad sense, embracing the rights of confrontation and fair trial, requires the disclosure of any evidence which may be favorable to the defense and which is *61 material to the issues of guilt or punishment. (US Const 6th, 14th Amends; NY Const, art I, § 6; Brady v Maryland, 373 US 83; People v Smith, 63 NY2d 41, cert denied 469 US 1227, reh denied 471 US 1049.) This duty to disclose necessarily exists in every criminal case and need not be preceded by a request or showing of need. (See, United States v Agurs, 427 US 97.) This obligation carries a correlative duty to preserve material, exculpatory evidence. (See, United States v Bryant, 439 F2d 642 [DC Cir 1971]; cf., People v Kelly, 62 NY2d 516 [implied statutory duty to preserve all discoverable evidence].)
Where evidence is not relevant or material to the issues in dispute, there is no such constitutional duty to disclose. (See, e.g., People v Haupt, 71 NY2d 929 [gun and notebook, inadvertently lost, had no relevance to the issue of sanity].) Similarly, where retesting any original sample or testing a second sample is not practicable, or would not yield a reliable result, it cannot be said that there is any evidence favorable or material to the defense, or indeed, even relevant to the case. Under such circumstances, there is no constitutional duty to preserve such samples, or to collect additional samples later for testing by the defense. (See, e.g., People v Farrell, 58 NY2d 637 [routine, intentional destruction of breathalyzer ampoule held permissible]; People v Alvarez, 70 NY2d 375 [no duty to collect and retain additional ampoules].) In short, there can be no constitutional violation for the failure to collect, retain, disclose or retest evidence that would be unquestionably valueless and inadmissible.
The instant case is not susceptible to such analysis. It cannot now be determined whether the retained samples would be favorable to the defense, or even admissible at trial. To require that defendant make such a showing in order to obtain disclosure and testing begs the question: only by attempting a retest can one ascertain the authenticity of the stored sample and the practicality of retesting; only by a successful retest can one judge the usefulness or favorability of the results to the defense. The prosecution is thus asking this court to impose on defendant an impossible burden — one which, by definition, could never be met. To do so would defy logic, flout proper scientific practice and ignore plain common sense. Worse yet, it would wreak a basic unfairness incompatible with due process.
Given the general acceptance of scientific testing, and the improbability that the toxicologist will be able to testify from memory about the exact procedures used, it would be exceed *62 ingly difficult to fruitfully cross-examine the expert’s testimony about general practice in conducting the test. Since testimony of blood alcohol content is invariably dispositive in drunk driving cases, independent testing by a defense expert is imperative if the defense is to have a fair opportunity to confront the toxicologist and the findings. Indeed, it would be particularly disingenuous to force defendant to first demonstrate authenticity and appropriate storage, since these matters, along with the physical evidence and the expert, are within the exclusive ken and control of the prosecution. (See, People v White, 40 NY2d 797, supra [right of defense to independent testing of narcotics]; see also, People v Evans, 141 Misc 2d 781, 783 [Sup Ct, NY County] [defense granted access to prosecution expert "(w)here the government holds a monopoly of expertise”].)[4] Finally, as a matter of public policy, it is fundamentally unfair to deny someone reasonable access to fluid specimens taken from one’s own body, sought to be used by an adversary and likely to be outcome-determinative.
Civil litigants are routinely permitted to test property within an adversary’s exclusive control. (See, CPLR 3101 [a]; 3120.) Such an opportunity is essential not only for adequate, professional case preparation, but to the integrity of the trial as a search for the truth. (See, Brady v Wyeth Labs., 106 AD2d 795 [3d Dept].) A criminal defendant, risking the loss of liberty, should be accorded no less.[5]
Thus, while the test results may not ultimately be material, in the evidentiary sense of being admissible at trial, an opportunity to conduct the test should be regarded as material in the pretrial disclosure sense of being necessary for the *63 adequate preparation of a defense. Under these circumstances, deliberate withholding of the extant blood samples would deprive the defendant of due process. (Cf., People v Briggs, 81 AD2d 1017 [4th Dept] [inadvertent loss or destruction of blood sample held not a constitutional violation].)
CONCLUSION
Movant is statutorily and constitutionally entitled to promptly inspect and independently^ test the retained blood samples under the conditions specified by the court in its order.
The People have been directed, within 15 days of the court’s order, to make available a portion of the remaining blood samples of sufficient quantity to enable defendant’s expert to perform independent testing at the laboratory of the Chief Medical Examiner. If the Chief Medical Examiner does not consent to the conduct of such test at his office, defendant’s expert may perform such test at a laboratory of his or her choice. The Chief Medical Examiner shall retain an equivalent quantity of blood for future reference.
This court does not decide whether the results, if any, of such test are admissible at trial. That issue is appropriately determined by the trial court, in limine, after a hearing on the factual issues of authenticity, relevancy and materiality.
Order signed granting motion under specified conditions.

. While this motion was sub judice, the Legislature amended CPL 240.20 (1) to add a new paragraph (k), which reads as follows: "(k) In any prosecution commenced in a manner set forth in this subdivision alleging a violation of the vehicle and traffic law, in addition to any material required to be disclosed pursuant to this article, any other provision of law, or the constitution of this state or of the United States, any written report or document, or portion thereof, concerning a physical examination, a scientific test or experiment, including the most recent record of inspection, or calibration or repair of machines or instruments utilized to perform such scientific tests or experiments and the certification certificate, if any, held by the operator of the machine or instrument, which tests or examinations were made by or at the request or direction of a public servant engaged in law enforcement activity or which was made by a person whom the prosecutor intends to call as a witness at trial, or which the people intend to introduce at trial.” (L 1989, ch 536, § 1, eff Nov. 1, 1989.) The new paragraph (k) is redundant and unnecessary, duplicating the intent and express wording of the preexisting statute. It was apparently adopted to clarify the right to discovery on demand, in the face of resistance in some local courts. (See, Preisér, Supp Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 240.20, 1990 Pocket Part, at 141.)

. Following submission of this motion, upon learning that the samples were scheduled for routine destruction, this court issued a protective order directing the continued retention and preservation of the samples pendente lite.

. Defendant did not follow the demand procedure within the statutorily prescribed period of time. (See, CPL 240.80, 240.90, 255.20.) The People have neither objected to the failure to follow the statutory procedure, nor claimed to have been prejudiced by the passage of time. Given the importance of the issues raised and the need to proceed without unnecessary delay, this court has chosen to overlook the procedural irregularity and has decided the motion on the merits.

. Requiring discovery frequently has the incidental effect of forcing the prosecution to investigate its case to a better extent than it might otherwise have done. In any event, it compels each side to take a closer look at its case. (See, Gerstenzang, Handling the DWI Case in New York § 8.9.) To the extent that each side becomes better prepared, and is thereby placed on a more equal footing, the interests of justice and judicial economy are both served.

. Were this a civil action in tort arising from the automobile accident which preceded the defendant’s arrest, the defendant would have been afforded access to the blood samples. (See, Rivers v Travelers, 80 AD2d 687 [3d Dept]; Marotta v Hasto, 119 Misc 2d 1094 [Sup Ct, Schenectady County].) Given the collateral estoppel effect which a finding of intoxication in the instant criminal action would have on a subsequent civil action, denial of the relief sought would moot the availability of relief in a subsequent civil action. Thus, to deny this motion would likely effect a double injustice: it would unfairly disadvantage the defendant both in this court and in a civil action.