*846 OPINION OF THE COURT
Nicholas Colabella, J.
In a proceeding pursuant to CPLR article 78, petitioner seeks to compel the respondent District Attorney to permit DNA testing of physical evidence presented at the trial of his criminal action in which he was convicted for rape in the first degree (indictment No. 81-367). The judgment of conviction was affirmed (see, People v Dabbs, 141 AD2d 664) and petitioner is presently serving 12 Vi to 25 years. Petitioner’s discovery request is made as a prelude to a possible motion to vacate the conviction pursuant to CPL article 440 based on newly discovered evidence.
The evidence sought for testing consists of semen and other bodily secretions. The prosecution’s forensic expert Robert Adamo testified at the criminal trial that he was unable to determine if semen on the victim’s panties, a gauze pad and rape test slides belonged to defendant. Blood-grouping tests on stains on a pair of pants worn by the victim were similarly inconclusive in revealing the presence of two blood antigens "B” and "H”, of which only the "H” antigen is secreted by defendant. Following trial, the physical evidence was preserved at the Westchester Department of Laboratories and Research.[1]
The DNA analysis petitioner proposes is to be performed by Lifecodes, Inc. and is now generally accepted (see, e.g., People v Shi Fu Huang, 145 Misc 2d 513; People v Castro, 144 Misc 2d 956; People v Wesley, 140 Misc 2d 306), but was not available at the time of petitioner’s trial in 1984. Petitioner asserts that such testing could yield conclusive evidence of his innocence.
The application is opposed by respondent on the basis that a proceeding under CPLR article 78 to compel lies only when there is a clear legal right to the relief sought. In this case, respondent argues there is no statutory right to the requested discovery after conviction and appeal. Respondent also objects that the application is speculative in that petitioner has failed to show the evidence can still be tested, the likely results of such testing, and whether new bodily fluid would have to be *847 taken from the victim. Finally, respondent urges denial of the application to avoid setting a precedent by which other convicted sex offenders will demand DNA testing.
In reviewing these claims, the court determines at the outset that the relief sought is improperly brought as a proceeding to compel under CPLR article 78. Respondent’s consent to testing is irrelevant since he is not in possession of the physical evidence in issue.[2] The court deems the application to be in the nature of a postconviction motion for discovery in the criminal action, which, while made on notice to respondent, is addressed to the discretion of the court.
On the merits, it is well established that, notwithstanding the absence of a statutory right to postconviction discovery, a defendant has a constitutional right to be informed of exculpatory information known to the State (see generally, Brady v Maryland, 373 US 83; People v Robinson, 133 AD2d 859; People v Lumpkins, 141 Misc 2d 581, 587). This rule devolves from the fundamental right to a fair trial mandated by the Due Process Clauses of the Fifth and Fourteenth Amendments of the US Constitution (United States v Agurs, 427 US 97, 107; see also, Pennsylvania v Ritchie, 480 US 39, 56; United States v Bagley, 473 US 667, 675; Brady v Maryland, supra, at 86), and imposes a constitutional duty on the prosecution to disclose to the defense evidence favorable to the defendant that is material to either guilt or punishment (United States v Bagley, supra, at 674-675; Brady v Maryland, supra, at 87). The purpose of requiring disclosure is "not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur” (United States v Bagley, supra, at 675).
Implicit in the requirement of materiality is a concern that the undisclosed evidence might have affected the outcome of the trial (United States v Agurs, supra, at 104). Evidence is material where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability’ is a probability sufficient to undermine confidence in the outcome” (United States v Bagley, supra, at 682; see also, People v Chin, 67 NY2d 22, 33). The right to exculpatory evidence extends to evidence which impeaches the credibility *848 of the People’s witnesses (Giglio v United States, 405 US 150, 154-155; People v Cwikla, 46 NY2d 434).
A corollary to the duty of disclosure is the duty to preserve exculpatory material (People v Kelly, 62 NY2d 516, 520; People v Simmons, 36 NY2d 126, 131; United States v Bryant, 439 F2d 642, 647; People v Saddy, 84 AD2d 175). Bryant explains:
"[T]he due process requirement [of disclosure] applies to all evidence which 'might have led the jury to entertain a reasonable doubt about [defendants’] guilt’ * * * [T]his test is to be applied generously to the accused when there is 'substantial room for doubt’ as to what effect disclosure might have had.
"But in these cases we are entirely in the dark. * * * If the due process requirement is directed to evidence whose nondisclosure 'might’ have harmed the accused, its purpose clearly reaches the type of missing evidence at issue here. Were Brady and its progeny applicable only when the exact content of the non-disclosed materials was known, the disclosure duty would be an empty promise, easily circumvented by suppression of evidence , by means of destruction rather than mere failure to reveal. The purpose of the duty is not simply to correct an imbalance of advantage, whereby the prosecution may surprise the defense at trial with new evidence; rather, it is also to make of the trial a search for truth informed by all relevant material, much of which, because of imbalance in investigative resources, will be exclusively in the hands of the Government” (439 F2d, supra, at 644).
Applying the rationale of Bryant (supra) in this State, courts have dismissed indictments after convictions because of destruction or loss of evidence by the police when that police conduct has deprived a defendant of material of high exculpatory potential (e.g., People v Springer, 122 AD2d 87, 90; People v Pantino, 106 AD2d 412, 413; People v Saddy, 84 AD2d 175, 178-179, supra; People v McCann, 115 Misc 2d 1025; cf., People v Lumpkins, supra, at 588).
By a parity of reasoning, where evidence has been preserved which has high exculpatory potential, that evidence should be discoverable after conviction. Due process is not a technical conception with a fixed content unrelated to time, place and circumstances (Cafeteria Workers v McElroy, 367 US 886). It is flexible and calls for such procedural protections as the particular situation demands (Morrissey v Brewer, 408 US 471, 481). Clearly, an advance in technology may constitute such a change in circumstance (People v Molina, 121 Misc 2d 483, 493, revd on other grounds 128 Misc 2d 638).
*849 It is undisputed by respondent that, if petitioner were to be tried now, he would be entitled to DNA testing of the physical evidence. The need for testing is analogous to that considered in People v White (40 NY2d 797), where the evidence in issue was a controlled substance. The Court of Appeals reasoned that "[defendant's guilt or innocence hung exclusively on the nature and amount of the substance in question; he advanced no other theory of defense. For refutation of the charge against him, there was no acceptable alternative to scientific testing by experts of his choice” (40 NY2d, supra, at 798; see also, People v Green, 123 Misc 2d 648).
Similarly, in this case, while it is unclear what such testing will ultimately reveal, petitioner has demonstrated an adequate foundation for the testing by showing that the victim’s panties, a gauze pad and rape test slides have high exculpatory potential. The victim testified at a felony hearing that her attacker ejaculated and at trial that she had not had sexual relations with anyone else for at least 24 hours before the attack. Further, while not in the trial record, it is alleged there is a statement in the medical records of the victim that she, in fact, had not had sexual relations for several preceding months. This allegation is not refuted by respondent. Assuming the sexual history as described to be true, any semen taken from the victim could only belong to her attacker. If DNA testing could exclude that semen as belonging to petitioner, it would strongly impeach the credibility of the victim’s identification of petitioner.
Testing of the stains on the pants worn by the victim would be less probative since the slacks were borrowed from the victim’s mother. If testing of the panties, gauze pad and slides is to be allowed, however, there appears little reason not to permit DNA testing of such other clothing samples since it may at least exclude petitioner as the depositor of the blood antigen "H” found on the pants.
The court rejects respondent’s suggestion that petitioner should be required to demonstrate further, as a threshold showing, the present viability of such testing given the age and condition of the preserved evidence. Such a requirement would be an impossible burden since it involves expert opinion that could only be had upon examination of the evidence (cf., People v Karpeles, 146 Misc 2d 53, 61).
Respondent’s other objection as to the possible need for new bodily fluid from the victim is both speculative and premature. *850 No such application is before the court. Nor is there any basis at this point to believe such additional samples would be needed.
Lastly, to deny petitioner the opportunity to prove his innocence with such evidence simply to ensure the finality of convictions is untenable. Mistaken identification " 'probably accounts for more miscarriages of justice than any other single factor — perhaps it is responsible for more such errors than all other factors combined’ ” (United States v Wade, 388 US 218, 229; see also, People v Daniels, 88 AD2d 392, 401; People v McCann, 115 Misc 2d 1025, 1032, supra). Consistent with society’s "overriding concern with the justice of the finding of guilt” (United States v Agurs, 427 US, supra, at 112), the courts, as well as the prosecution, must be vigilant to correct a mistake. "It is the State that tries a man, and it is the State that must insure that the trial is fair” (Moore v Illinois, 408 US 786, 810 [Marshall, J., concurring in part and dissenting in part]). Put another way, "[t]he State’s obligation is not to convict, but to see that, so far as possible, truth emerges” (Giles v Maryland, 386 US 66, 98 [Portas, J., concurring]). "When evidence favorable to the defendant is known to exist, disclosure only enhances the quest for truth; it takes no direct toll on that inquiry” (United States v Bagley, 473 US, supra, at 692-693 [Marshall, J., dissenting]).
Respondent is, of course, entitled to reasonable safeguards to ensure the integrity of the evidence and the test results. As noted in White (40 NY2d, supra, at 799), testing should be conducted "with safeguards, analogous to those observed by the prosecution in its own testing, to protect against contamination or destruction of the evidence. The particular safeguards must necessarily be designed on an ad hoc basis in light of the nature, form, quantity and other characteristics of the substance in question and with recognition of other material circumstances of the individual case.”
Accordingly, the petition is granted to the extent that the physical evidence preserved by the Westchester Department of Laboratories and Research shall be transferred to Lifecodes, Inc. for DNA testing within 10 days of service of the order and
*851 judgment to be entered. Respondent may include in the order and judgment to be submitted such safeguards as are believed to be reasonable and necessary.[3]

. The full extent of the evidence preserved is unclear. The April 18, 1989, letter of Frederick Drummond of the Westchester Department of Laboratories and Research indicates, for example, that samples of the panties and the gauze pad have been preserved, but does not specifically mention the rape test slides. Respondent, however, appears to assume the latter also exists.

. The actual custodian of the physical evidence, the Westchester Department of Laboratories and Research, appears to take no position on the turnover of the evidence for further testing.

. [5] DNA testing ultimately revealed that petitioner’s DNA composition did not match with the DNA composition on the victim’s underwear. In light of this revelation, the court granted petitioner’s subsequent motions to vacate the judgment of conviction (People v Dabbs, Sup Ct, Westchester County, July 3, 1991, Colabella, J.), and to dismiss the indictment (People v Dabbs, Sup Ct, Westchester County, Aug. 22,1991, Colabella, J.).