OPINION OF THE COURT
John R. LaCava, J.
Louis Trama was convicted, after a jury trial presided over by then County Court Judge James Cowhey, of six counts of sodomy in the first degree and four counts of rape in the first degree under indictment number 87-301. He was also convicted of two counts of sodomy in the first degree, two counts of sexual abuse in the first degree, assault in the second degree, petit larceny, and menacing under indictment number 86-1513.[1]
On July 7, 1987, Mr. Trama was sentenced to multiple periods of incarceration including several concurrent 81/3-to-25-year terms consecutive to multiple 21/s-to-7-year terms. The convictions were affirmed on appeal on April 2, 1990 (see, People v Trama, 160 AD2d 748). Application for leave to appeal to the Court of Appeals was denied on August 22, 1990 (see, People v Trama, 76 NY2d 867). Application for reconsideration of that determination was denied on December 3, 1990 (see, People v Trama, 76 NY2d 1024). On November 2, 1990, Mr. Trama moved to reargue the Appellate Division’s affirmance. That application was denied on April 3, 1991.
By motion dated July 6, 1992 defendant moved for an order authorizing the drawing of a blood sample from his person to be used for DNA analysis. The following is stated in defense counsel’s affirmation in support of the motion: "[The sample is sought] in order that it can be DNA profiled, and compared with materials recovered at the time of the crime, which is currently being tested for DNA profiles at the same laboratory”. He also stated: "Now that [DNA testing] meets the standards of Frye, and the evidence from his trial is still available for testing, the defendant * * * desires to have the materials tested and compared for DNA similarities”.
Consistent with the representation that evidence was "available” and was "currently being tested”, no request was made *95 for an order directing the People to locate or preserve any particular items of evidence. Additionally, counsel had already secured items of evidence directly from the Westchester County Department of Laboratories and Research through his own efforts and without any notice to the People.
The court (Cowhey, J.) denied the motion with leave to reapply upon serving all proper parties. Following proper service, by decision and order dated October 28, 1992, the application was granted. Supplemental orders followed on November 24, 1992 and March 25, 1993.
In September 1993 the People were served with a CPL article 440 motion based upon DNA analysis which revealed that blood recovered from one of the victim’s blue jeans did not match defendant’s blood (indictment No. 87-1513). In opposing the motion, the People argued that the test result was irrelevant because the facts established that no one other than the victim was injured during the incident.
Upon further examination, by letter dated December 1, 1993 defendant withdrew the CPL article 440 motion to allow "the opportunity to secure further and more extensive testing before resubmitting the motion.” The court (Cowhey, J.) formally acknowledged the withdrawal in a decision and order dated January 20, 1994.
By letter dated January 31, 1994 the People advised defendant, through counsel, that on September 20, 1990 the State Police had destroyed a rape kit, a pair of panties, and a pair of jeans (indictment No. 87-301). Later, it was also revealed that on December 1, 1992 the State Police destroyed 11 items, including a victim’s sweatshirt (indictment No. 86-1513).
By motion dated July 21, 1995 defendant now moves pursuant to CPL 440.10 to "reopen” the case to determine (1) why evidence was destroyed even though, as he contends, the authorities were aware that he was actively pursuing legal remedies to vacate the conviction and uncover new evidence and (2) whether the Office of the Westchester County District Attorney suppressed, destroyed or allowed the destruction of evidence that "was clearly the type vital to overturning the conviction, in particular a rape kit and its specimens.”[2]
Courts have characterized as falling within the parameters of appropriate postconviction relief, postconviction applications *96 for DNA testing of available evidence to allow comparisons to be made with specimens taken from a defendant (see, Matter of Dabbs v Vergari, 149 Misc 2d 844 [Sup Ct, Westchester County 1990] [CPLR art 78 proceeding converted to postconviction motion for discovery]; People v Callace, 151 Misc 2d 464 [Suffolk County Ct 1991] [application recognized as a prelude to a CPL 440.10 (1) (g) motion to vacate a conviction based on newly discovered evidence]). In Dabbs (supra) and Callace (supra), DNA testing was not available at the time of trial. An application for postconviction discovery was denied in at least one case where DNA testing was available at the time of trial but was not employed (see, People v Brown, 162 Misc 2d 555 [Cayuga County Ct 1994]).
Effective August 1994, upon a proper showing, CPL 440.30 (1-a) permits postconviction DNA testing of evidence in cases where the conviction takes place before January 1, 1996. Among other things, "[defendant must show that the evidence to be tested still exists and is available in quantities sufficient to make testing feasible” (Matter of Washpon v New York State Dist. Attorney, Kings County 164 Misc 2d 991, 997 [Sup Ct, Kings County 1995]).
Like Dabbs and Callace (supra), defendant’s convictions preceded the general acceptability of DNA analysis. Unlike any of the cited cases and contrary to the requirements of CPL 440.30 (1-a), however, the items sought to be tested are no longer available. The premise underlying defendant’s motion is that the People’s failure to have preserved evidence entitles him to some relief. Therefore, a hearing to determine the facts and circumstances surrounding the destruction of evidence is in order. I disagree.
"The People have a duty to prevent the destruction of evidence until all appeals have been exhausted” (People v Watkins, 189 AD2d 623, 624, lv denied 81 NY2d 978; see also, People v Brown, 196 AD2d 465). Since motions to reargue Appellate Division and Court of Appeals determinations may be made within 30 days after the appeal or motion is decided (see, CPL 470.50 [2]; 22 NYCRR 500.11 [g]; 670.6 [a]), exhaustion includes the 30 days succeeding a defendant’s final appeal, a motion for leave to appeal, or any other motion.[3]
Defendant has failed to assert that either of his motions for reconsideration was timely, and that the one to the Court of Appeals was made within the 30-day window following the *97 August 22, 1990 denial of his application for leave to appeal to the Court of Appeals. In any event, both applications for reconsideration were denied.
Even assuming that the People’s obligation to preserve evidence extended until the time that the last appellate court determination was reached on April 3, 1991, I find that no legal consequence flows from the September 20, 1990 destruction of a rape kit, jeans and panties. No demand had been made for the items during the period during which preservation was required, nor did the People have any reason to believe that they would be.
The December 1, 1992 destruction of evidence, including the sweater, is also without consequence. This event took place well beyond any date that could arguably be used as the date on which defendant could be deemed to have exhausted his appeals, thereby keeping the People’s duty to preserve evidence alive.
Judicial recognition of a right to postconviction discovery does not, in and of itself, extend or enlarge the People’s duty to preserve evidence beyond the exhaustion of one’s appellate rights. Nor does CPL 440.30 (1-a). While there might very well exist a circumstance where, although appeals have been exhausted, fundamental fairness imposes an obligation upon the People to preserve various items of evidence for postconviction discovery, this is not such a case.
The first indication that the People were aware of defendant’s postconviction investigation is when they received defendant’s July 1992 motion for an order to draw blood. The People opposed that motion on the limited ground that the Department of Correctional Services was a necessary party whom they had not served. In their affirmation in opposition, the People noted that they were not aware of what items of evidence were already forwarded for testing and what, if any, results had then been reached. Additionally, counsel unequivocally represented in his July 1992 motion that the needed evidence was "available” and that it was then "currently being tested.”
In sum, I hold that absent circumstances not here present such as knowledge or reason to believe that defendant is seeking postconviction discovery of particular items of evidence, neither the judicially recognized right to postconviction discovery (see, Matter of Dabbs v Vergari, supra; People v Callace, supra) nor the statutory right (see, CPL 440.30 [1-a]) extends the People’s obligation to prevent the destruction of evidence beyond 30 days after the last appellate determination *98 is reached (see, People v Watkins, supra; People v Brown, supra). Therefore, absent knowledge or reason to believe that defendant is seeking postconviction discovery of particular items of evidence, where evidence is destroyed after the exhaustion of appellate rights, no legal consequence flows. Furthermore, even where evidence is destroyed during the period in which the People are obligated to preserve it, consideration will not be given to what, if any, relief may be accorded a defendant for such destruction in the absence of a showing that demand was made for such evidence within 30 days after the last appellate determination, or that, at the time that the evidence was destroyed, there existed reason to believe that defendant was seeking discovery of the subject evidence.
Based upon the foregoing, the motion is denied.

. The proceeding is before me since the Hon. James Cowhey has since been elected to the New York State Supreme Court.

. Although the caption in the moving papers merely recites indictment No. 86-1513, the papers and the People’s answer address both indictments. Accordingly, so does this decision and order.

. The period may be extended upon good cause shown.