THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v CRAIG
SKINNER, Respondent.

First Department, March 20, 1990

*Oren Root, Jr.,* of counsel *(Patrick M. Wall,* attorney), for respondent.

*Lawrence B. LaRaus* of counsel *(Stanley R. Kaplan* with him on the brief; *Robert T. Johnson, District Attorney,* attorney), for appellant.

### OPINION OF THE COURT

WALLACH, J.

What did he know and when did he know it? The answer to this seemingly simple inquiry, as all Americans now have reason to appreciate, can be at times quite elusive. In the context of this case, the same teasing question arises with respect to the knowledge of defendant's former lawyer, Arlen S. Yalkut, Esq., of the contents of a ninth note sent by the jury to the Justice presiding at defendant's criminal trial in June 1982. At that trial defendant was convicted of attempted murder in the second degree arising from his alleged participation in a shootout with four police officers, and he was sentenced to a term of 7 to 21 years for this crime as well as a lesser concurrent term. Six years later, following a hearing on defendant's postconviction motion pursuant to CPL 440.10, the hearing court (before another Judge, the Trial Judge having retired) vacated this conviction on the ground that the trial court had failed to communicate the contents of this jury note to either defendant or his counsel, thereby violating defendant's constitutional rights. The People appeal from this ruling.

It is undisputed that about 6:00 P.M., during the second day of its deliberation, the jury at defendant's trial sent a note to Justice William J. Holland, handwritten by the jury foreman, the full text of which reads as follows:

"To the Judge:

"I am conveying the words of two jurors. I am quoting their statements:

*"Juror 2*

"Due to the great verbal and emotional strain caused by this lengthy deliberation I request to be replaced by an alternate juror.

*"Juror 11*

"Due to the fact that I do not believe beyond a reasonable doubt that justice would be done by finding Craig Skinner [defendant on trial] guilty of attempted murder in the second degree I am being subjected to unnecessary mental anguish. I would like to be taken off of the case because of the following verbal condemnation and abuse by one of the other jurors 'I for one know that Barbara does not accept the law'. In addition, one other juror readily expressed verbal agreement to this statement."

Mr. Yalkut, defendant's counsel at his trial and a witness for defendant at the latter's postconviction hearing six years later, testified that although this note was marked as court exhibit 9 (thus becoming part of the trial record) and was responded to by Justice Holland with what the motion court described as "a general Allen-type *(Allen v. United States,* 164 US 492) charge, without defendant's objection," counsel deposed that he was never permitted to read the note itself. Rather, Mr. Yalkut testified that he was merely apprised of a conclusory description of the two-page communication—namely, that it contained nothing more than a simple assertion that the jury deliberations were deadlocked. Based upon this testimony defendant contends—a contention that the motion court has adopted—that this supposed insulation of defendant and his counsel from access to the note both at trial and after the submission of his unsuccessful appeal to this court *(People v Skinner,* 110 AD2d 1093 [1985], *lv denied* 65 NY2d 700) deprived defendant of his constitutional and statutory rights to be meaningfully "present" at this critical stage of his trial (US Const 6th, 14th Amends; NY Const, art I, § 6; CPL 260.20, 310.30; *see, Rogers v United States,* 422 US 35; *Krische v Smith,* 662 F2d 177, 178 [2d Cir 1981]; *United States v Ronder,* 639 F2d 931 [2d Cir 1981]; *People v Mehmedi,* 69 NY2d 759, 760; *People v Torres,* 72 NY2d 1007; *People v Ciaccio,* 47 NY2d 431, 436-437; *People v Oliver,* 4 AD2d 28, 32, *affd* 3 NY2d 684).

We disagree with this conclusion. In a colloquy with the

trial court on the day following receipt of Note No. 9 (Note 9), Mr. Yalkut indicated a far greater knowledge of the content of Note 9 then he was able to recall having at the hearing. After Note 9 was received, Mr. Yalkut addressed the court on the following day in this manner: "MR. YALKUT: Thank you, Your Honor. I would also like to note that note ten or *I believe it's note number nine*—it seemed to indicate that, at least, *some of the jurors were being subjected to what they consider to be undue pressure* in the jury room and I don't think it's the desire of any party to coerce a juror into—into not following conscientiously in arriving at a decision with respect to any particular counts of the Indictment and for that reason *I'm asking at this point that we inquire as to what the indications are* and it was not gone into when that note was received." (Emphasis added.)

Defendant's present counsel argues that this statement is so vague that it supports his contention that Mr. Yalkut had no knowledge of the note. For example, defendant contends that the reference to "some of the jurors" (as opposed to the two actually involved), supports this proposition. On the contrary, we find that the statement throws a strong beam of light upon an area supposedly left in total darkness, and evinces Mr. Yalkut's clear understanding of the fundamental substance of Note 9; i.e., a complaint about "undue pressure" exerted upon more than one juror. Where a statement by a participant in an event is considered as a clue to the declarant's knowledge of that same event, that which is included in his statement is generally of far greater significance than that which is omitted.

Other circumstances would also strongly support a finding that Mr. Yalkut was entirely familiar with Note 9 prior to the discharge of the trial jury. In his testimony at the hearing Mr. Yalkut conceded that the jury sent 11 communications to the court prior to their verdict, all of which were read into the record and understood by him except exhibit 9. Why then was Note 9 not read into the record? Admittedly with the benefit of hindsight (and not recalled by Justice Holland in his testimony) we think the simple answer may be found in *United States v Ronder (supra,* 639 F2d, at 934) as follows: "On occasion the personal nature of a note or the risk of exacerbating tensions among jurors may make it appropriate to forgo reading the text of the note to the entire jury; in that event it may be appropriate to disclose the note to counsel *in*

*camera* or even to make some redaction. *See United States v. Robinson, supra,* 560 F.2d at 516-17 (juror's name)."

We find it difficult to credit the suggestion that an attorney of Mr. Yalkut's experience and ability in criminal trials would make sure to read 10 out of 11 jury notes and ignore completely a ninth note consisting of two pages, to which the court felt obliged to give a detailed and fairly lengthy response. Are we really to believe that the cursory description, "deadlock note", coming from the court, paralyzed all further inquiry? At the hearing both the trial court, Judge Holland, and the trial Assistant District Attorney testified to an invariable practice by the Judge to make jury notes fully available to counsel. The recollection of the ADA was that full disclosure was made to Mr. Yalkut. And it should be noted that the trial record is utterly barren of any request by Mr. Yalkut to see Note 9, much less any indication that any such request was refused. This in itself is weighty proof that a request would be superfluous, since the information was already in hand.

With the foregoing in mind as bearing upon defendant's preverdict knowledge of exhibit 9, we find it hardly surprising that defendant raised on his appeal one of the key points upon which he now seeks CPL 440.10 relief. Mr. Yalkut testified at the hearing as to why his nonreading of exhibit 9 was prejudicial to defendant by stating what he would have done at the trial had he timely known the contents of Note 9. Mr. Yalkut testified on direct examination:

"Q. If you had seen Court Exhibit Number 9 during the course of the jury deliberations, what would you have done?

"A. Well, as I pointed out to you, since Court Exhibit 9 mentions specifically that two jurors, jurors two and juror 11 had been subjected to very specific either threats and/or intimidation, *I would have requested on the record that there had been held a hearing to determine what the appropriate remedy would be"* (emphasis added).

Apparently, defendant's counsel has overlooked the fact that he raised this very point on his original brief to this court, years before he or defendant allegedly acquired any knowledge of Note 9. In point III of that brief defendant urged: "Moreover, *because the jurors' note indicated that some of the jurors wanted to be replaced by alternates, the court should have held a hearing* upon defense counsel's request to determine the jurors' reasons for requesting to be relieved.

Such inquiry is required to determine the source of the difficulty whenever there is an indication that a juror is having undue difficulty deliberating." (Emphasis added.)

It is therefore clear that insofar as defendant's motion rests upon an allegedly improper denial of a hearing with respect to jury problems during deliberation, his motion to vacate the conviction should have been denied under CPL 440.10 (2) (a) which provides that no such relief may be granted when "[t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment". This is precisely the situation present here.

■ With respect to defendant's constitutional arguments, because defendant had actual preappeal knowledge of Note 9,* they could have been briefed and argued on his direct appeal. Having failed to do so, defendant no longer has these arguments available to him for us in his belated attack upon the conviction after final affirmance on appeal (CPL 440.10 [2] [c], which provides that the court *must* deny defendant's motion when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's * * * unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him").

Thus, defendant's failure to present his constitutional attack upon his conviction after trial in the course of his direct appeal forecloses any consideration of it now.

Accordingly, the order of Supreme Court, Bronx County (Robert L. Cohen, J.), entered December 7, 1988, which after a hearing granted this defendant's motion under CPL 440.10 to vacate a judgment of the same court (William J. Holland, J.), rendered April 8, 1982, which after a jury trial convicted him of attempted murder in the second degree and attempted assault in the first degree (and sentenced him to concurrent terms of from 7 to 21 years and 2⅓ to 7 years, respectively) should be reversed, on the law and the facts, the judgment of

---

* Defendant's appeal brief was submitted some weeks before the date of this court's affirmance on April 18, 1985. Mr. Yalkut testified that he first heard of Note 9 by means of a letter from his client about a year before the hearing held on June 15, 1988, i.e., about June of 1987. The clear reference to replacement by alternate jurors clinches preappellate knowledge of the full content of Note 9.

conviction reinstated, and defendant directed to surrender for execution of the unserved balance of said sentence.

KUPFERMAN, J. P., ASCH, KASSAL and ELLERIN, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about December 7, 1988, unanimously reversed, on the law and the facts, the judgment of conviction reinstated, and defendant directed to surrender for execution of the unserved balance of said sentence.