OPINION OF THE COURT
Peter E. Corning, J.
Defendant brings a postconviction discovery motion requesting an order of this court compelling the District Attorney of Cayuga County to make available evidence which was accu *556 mulated during the course of his criminal investigation so that he may avail himself of possible DNA testing.
FACTS
Defendant, Roy A. Brown, was indicted in June of 1991 for the murder of Sabina Kulakowski, a social services worker for the County of Cayuga, said murder having occurred on May 23, 1991. An autopsy of the victim determined the deceased had been stabbed numerous times and presumably bitten by her assailant, who left seven sets of bite marks on the body of the victim. A laboratory analysis concluded that swabs taken from two of the seven bite marks contained salivary amylase. Blood grouping tests on the swabs were inconclusive.
At trial the People produced witnesses who testified: (1) the defendant had made threats against social services workers for taking his children from him; (2) that when angry, the defendant would often bite the target of his anger; (3) that the defendant had made an admission that he had killed a girl; and (4) that evidence of bite marks found on the deceased together with dental impressions of the defendant established the bite patterns to be identical insofar as measurements were concerned. In addition, the bite marks of the victim’s assailant had three missing teeth which were identical in location with missing teeth as reflected in the defendant’s dental impressions.
Testimony and lab reports concerning salivary amylase concluded there was not sufficient accumulation for a conclusive test as to blood grouping and no DNA testing was done. The laboratory reports reflecting the existence of the saliva swabs and the results of the testing were forwarded to defendant’s counsel on August 13, 1991 and receipt of said lab reports was acknowledged by defendant’s counsel on the record on August 15, 1991.
Trial commenced January 13, 1992 and concluded on January 23, 1992 with the jury finding the defendant guilty. The case was appealed to the Appellate Division, Fourth Department, which affirmed the conviction (People v Brown, 195 AD2d 967) and leave to appeal to the Court of Appeals was denied (People v Brown, 82 NY2d 804).
DISCUSSION
Defendant’s application is for postconviction discovery of the cotton swabs containing salivary amylase which the defendant *557 hopes will allow DNA testing and possible favorable results which will exculpate him. Conceding there is no statutory authority for postconviction discovery, the defendant contends that such testing would be in the interest of fundamental fairness and that if, in fact, the swabs lend themselves to DNA testing, the guilt or innocence of the defendant could be put to rest. While such logic may find a basis in emotion, it has no basis in statutory authority.
Historically, it has not been the option or practice of the judiciary to fashion procedures outside of statutory authority to revisit criminal convictions, as it has been tradition that the trial is the main event for determining guilt or innocence. Subsequent appeals are afforded the defendant to ensure the defendant’s rights were protected and that guilt was proven beyond a reasonable doubt.
There are those instances where a convicted defendant’s innocence may come into question subsequent to the trial. Absent statutory relief the historical remedy has been the use of the executive pardon, which in the State of New York exists under article IV, § 4 of the NY Constitution.
In addition, the State of New York, similar to many other States, has adopted procedural remedies which allow the judiciary to review a judgment of conviction in certain instances. This procedural remedy is encompassed in CPL 440.10, which enumerates those areas which would allow a court to vacate judgment subsequent to conviction.
Insofar as this case is concerned, the only section which appears to apply is section 440.10 (1) (g) which states:
"1. At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that:
"(g) New evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence.”
Defendant in his papers alleges that the existence of cotton swabs was first discovered by the defendant at the time of trial. The record clearly contradicts this contention,. since the *558 lab reports which contain the information concerning the cotton swabs were forwarded to the defendant on August 13, 1991 (six months prior to trial), receipt of which was acknowledged by defendant’s counsel on August 15, 1991. Therefore, any allegations relating to failure to give the defendant notice of scientific tests as they related to the saliva swabs so as to make them "New evidence” under section 440.10 are refuted and discounted. In addition, even if defendant’s allegations were accurate, defendant must under section 440.10 bring a motion with "due diligence.” Defendant admits he knew about the evidence at the time of trial (even though this court finds he knew about the evidence six months prior thereto), but has waited 2V2 years to bring a motion. By any stretch of the imagination, it cannot be said that defendant’s motion has been made with due diligence.
Anticipating that his argument under section 440.10 (new evidence) would be found tenuous and conceding there is no statutory authority for postconviction discovery, defendant urges this court to fashion a remedy pursuant to section 2-b (3) of the Judiciary Law which allows a court of record to "devise and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it.” This court does not believe it has authority to fashion extrajudicial remedies, particularly when to do so would jeopardize the finality of a conviction in a criminal case. For a court to willy-nilly tamper with verdicts long after their determination is extremely prejudicial to the People. The passage of time diminishes the reliability of criminal adjudications in that memories fade, witnesses leave or disappear and ultimately the People are left not only in a weakened position to try a case but with a legacy that a conviction is never final.
The defense has cited two New York cases which allowed postconviction discovery, i.e., Matter of Dabbs v Vergari (149 Misc 2d 844 [Sup Ct, Westchester County 1990]) and People v Callace (151 Misc 2d 464 [Suffolk County Ct 1991]). Both cases are distinguishable because they are premised on the fact that DNA testing was not available at the time of the trial and was available at the time of the postconviction discovery motion. In the instant case DNA testing was available at the time of investigation and trial but the defendant failed to avail himself of such procedures.
CONCLUSION
In essence, defendant’s position is that in "fundamental *559 fairness” a defendant should always be allowed to prove his innocence and that even though no statutory authority is available for such procedure, the court should nevertheless fashion a remedy to promote this "fundamental fairness.”
This court rejects defendant’s contention that he be allowed to avail himself of postconviction discovery. This court does not believe it has the authority to fashion a remedy which has no basis in statutory authority and which will extend the scope of postconviction proceedings beyond manageability, thereby precluding any possibility of finality.