OPINION OF THE COURT
Julius Vinik, J.
Defendant Samuel Washpon instituted a CPLR article 78 proceeding against the Kings County District. Attorney to compel blood group and DNA testing of the semen found on the jumpsuit and vaginal swab of a 1984 rape victim. As a CPLR article 78 proceeding is the incorrect section (see, Matter of Gold v Gartenstein, 54 NY2d 627), the court converted the proceeding to a motion to vacate judgment under CPL article 440. Both parties have been given an opportunity to address arguments under CPL article 440.
Defendant was convicted by a jury of rape in the first degree on August 23, 1985, based upon a complaint filed against him by his cousin, Renee Dunbar. Complainant claimed that in the morning hours of August 13, 1984, after a night spent partying at various social clubs, she had requested defendant to give her a ride home. Instead, she alleged that he drove her to a secluded spot and raped her. During the attack she claimed to have been cut on the left jaw with a knife.
At trial, the prosecution introduced into evidence the "rape kit” made at the hospital following the attack, which included vaginal swabs taken from the victim. Also introduced into evidence were a photograph showing complainant’s sutured wound and the complainant’s jumpsuit worn that evening. Expert testimony was also introduced that the stains on the jumpsuit and on the vaginal swabs were semen. The semen was never scientifically connected to defendant.
Defense counsel brought out that there was no blood in the car or on the knife. However, defendant did not testify at trial. He denied having sex with complainant or cutting her with a knife, but his version of events was never admitted into evidence.
Defendant was convicted and later sentenced as a persistent felony offender to imprisonment for 15 years to life. The judgment was affirmed by the Appellate Division, Second Department, on November 9, 1987 (People v Washpon, 134 AD2d 384), and leave to appeal to the Court of Appeals was denied on November 29, 1988 (People v Washpon, 73 NY2d 791).
Defendant filed CPL article 440 motions to vacate the *993 judgment in December 1986, January 1988, and March 1990, on the grounds, among others, of ineffective assistance of counsel, prosecutorial misrepresentation in the Huntley hearing and trial, and errors in the prosecutor’s summation. All the motions were denied.
Defendant also petitioned several times for a Federal writ of habeas corpus. These petitions were also denied.
Defendant now moves pro se to compel blood group and DNA testing of the semen stains on the victim’s clothing and the vaginal swab, to determine whether they match his blood type and genetic profile. He also wants an analysis made of the photograph of the victim introduced in evidence, claiming that the photo was "manufactured”. He also alleges that the improper summation by the prosecution unfairly influenced the verdict. Finally, he contests determination of his status as a persistent felony offender on the basis of prior convictions.
In converting this motion from an article 78 proceeding to a CPL article 440 motion, the court gave defendant the opportunity to address the various procedural bars to such a motion. Defendant has failed to address these issues. Nevertheless, the court will address one of the substantive issues raised by the motion.
In moving for DNA testing of the evidence at this stage, defendant is requesting new discovery at a postconviction juncture. However, discovery in a criminal proceeding is entirely governed by statute (People v Copicotto, 50 NY2d 222, 225; CPL art 240). There is no statutory basis for postconviction discovery (People v Brown, 162 Misc 2d 555; People v Callace, 151 Misc 2d 464). If there be no statutory basis, the court has no power to order discovery on its own (see, Matter of Hynes v Cirigliano, 180 AD2d 659; People v Mitchell, 201 AD2d 507).
Ordering the testing through the inherent powers of the court in the interests of justice is equally problematic. There is no constitutional right to discovery (Matter of Miller v Schwartz, 72 NY2d 869, 870). Even where the material desired is exculpatory in nature, there exists no discovery right (Weatherford v Bursey, 429 US 545, 559). Absent statutory authority, there is simply no entitlement to request discovery in a postconviction framework.
However, postconviction forensic DNA testing has recently been authorized by statute by CPL 440.30 (1-a). This clause was enacted in 1994 (eff Aug. 2, 1994) to provide for such *994 testing in cases where the test had not been available before conviction. It provides for DNA testing where the evidence is still in existence and available for testing, and provided there exists a "reasonable probability” that the results of the test could have led to a more favorable verdict to the defendant.
The only case to interpret the new statute is People v Chichester (162 Misc 2d 658 [Oct. 20, 1994]). That court noted that concomitantly with CPL 440.30 (1-a) the Legislature enacted a new Executive Law article 49-B. The Executive Law defines forensic DNA laboratories as laboratories operated by the State or locality which perform DNA testing in the course of their business. Reasoning from this, it was held that "[t]hese new sections provide a narrowly circumscribed defendant’s right to request forensic testing to be done by the State or a unit of local government if such tests are otherwise regularly performed by them. They are silent as to testing to be done on materials held by law enforcement authorities which a defendant may wish to analyze at his or her own expense.” (People v Chichester, supra, 162 Misc 2d, at 660.)
The result of this analysis is the conclusion that "[t]here is no provision in any of the newly enacted legislation that in any way relates to DNA testing done at private expense by a private laboratory” (supra). The legislation thus empowers the courts to order DNA testing by State or locally run laboratories under the appropriate circumstances, and never deals with the possibility of private testing.
In examining this reading of the clause, it is worthwhile to bring the language of the statutory addition in full: "1-a. In cases of convictions occurring before January first, nineteen hundred ninety-six, where the defendant’s motion requests the performance of a forensic DNA test on specified evidence, and upon the court’s determination that any evidence containing deoxyribonucleic acid ('DNA’) was secured in connection with the trial resulting in the judgment, the court shall grant the application for forensic DNA testing of such evidence upon its determination that if a DNA test had been conducted on such evidence, and if the results had been admitted in the trial resulting in the judgment, there exists a reasonable probability that the verdict would have been more favorable to the defendant.”
The new Executive Law article 49-B sets up a commission on forensic science (Executive Law § 995-a [1]), with a DNA subcommittee (Executive Law § 995-b [13]), which will accredit *995 forensic laboratories, including forensic DNA laboratories, to ensure they meet high scientific standards of operation (Executive Law § 995-b [1], [2], [2-a]). It defines "forensic laboratory” (Executive Law § 995 [1]) and "forensic DNA laboratory” (Executive Law § 995 [2]) — for the purposes of the article (Executive Law § 995), i.e., article 49-B — as laboratories operated by the State or a local unit of government. The new CPL 440.30 (1-a), although enacted in the same bill, is not part of the Executive Law article and, in any case, does not make mention of "forensic DNA laboratory,” only of "forensic DNA testing” of evidence. The words in the Executive Law, when used in this article, indicate that it does not apply to the CPL (see, People v McNamara, 78 NY2d 626, 630; People v Neumann, 51 NY2d 658, 665).
The intent of the new CPL 440.30 (1-a) is to provide an immediate means for DNA testing of evidence before State and locally run laboratories receive accreditation from the newly created commission. This is clear from the provision that State and local laboratories need not be accredited before January 1, 1996 (L 1994, ch 737, § 3), whereas CPL 440.30 (1-a) provides for DNA testing for convictions before January 1, 1996, the date of accreditation. CPL 440.30 (1-a) refers to testing by motion of the defendant, not by the State; as such, subdivision (1-a) must and does envision private testing, since it is by defendant’s motion and before accreditation. It is silent as to which laboratories to use because any DNA testing laboratory that meets the court’s approval will be acceptable until the State accreditation system is in place.
That this is the intent of the new law, and not as understood in People v Chichester (supra) can be seen by the cutoff date of the CPL provision: January 1, 1996. This matches the date upon which State and local laboratories are to be in compliance with accreditation standards (L 1994, ch 737, § 3). Once accredited State and local DNA testing laboratories are in place, there will no longer be any need to provide for postconviction testing through the courts under CPL 440.30 (1-a).
The Bill Jacket also lends support to this interpretation in its comments on the legislative intent of the new CPL provision. In the Budget Report on Bills, the new clause is summarized as follows: "Section two of the bill adds a new subdivision 1-a to Section 440.30 of the Criminal Procedure Law which authorizes criminal courts to grant forensic DNA tests for criminal convictions occurring prior to January 1, 1996 in *996 situations where: 1) DNA evidence exists and 2) such DNA testing would have resulted in a verdict more favorable to the defendant.”
In a similar vein, the general counsel for the Division for Youth describes the provision as follows: "Finally, the bill amends Criminal Procedure Law § 440.30 by adding a new subdivision 1-a providing that a defendant convicted of an offense prior to January 1, 1996 may make a motion for DNA testing of evidence. The court must grant the motion if there is a reasonable probability that the results of the test, if admitted, would result in a verdict more favorable to the defendant.”
A similar wording is used by counsel to the State Commission of Correction.
These summaries point out that the new provision allows criminal courts to provide for DNA testing upon defendant’s motion, without any restriction to forensic DNA laboratories of the State or local government. They lend support to the conclusion that the new clause, although part of a bill establishing State and local forensic laboratories to conduct DNA testing, is meant to allow the courts to conduct such testing at laboratories of the court’s appointment prior to January 1, 1996. Although not authoritative, they do provide an indication of the legislative intent that various departments of the executive branch understood in the enactment of CPL 440.30 (1-a).
Also of importance and left undefined by the statute is the issue of who pays for the testing at private laboratories for this expensive procedure. The budget report in the Bill Jacket leaves no allocation for DNA testings in convictions obtained before January 1, 1996. This lends weight to the supposition that since the testing is being done at the request and by motion of the defendant, it is presumed to be done at defendant’s expense as well.
Nevertheless, it must be noted that no provision has been made for the public to assume this expense in the case of an indigent defendant. It would defy the court’s sense of fair play to deny this opportunity to a defendant who cannot afford to undertake the procedure who can show that DNA testing may have resulted in a different verdict.
In all, in accordance with the above, this court cannot subscribe to the interpretation of the new clause given it by People v Chichester (supra). Instead, the court finds that CPL *997 440.30 (1-a) does provide for postconviction DNA testing in private laboratories by motion and at the expense of defendant. Defendant must show that the evidence to be tested still exists and is available in quantities sufficient to make testing feasible at this late date. This is a matter which defendant has failed to establish.
Equally important, a judicial determination must be made as to whether a reasonable probability exists of a more favorable verdict. An examination of the trial transcript leaves this requirement a far closer question than defendant anticipates. Defendant’s version of the events, as explained at the sentencing hearing, never entered into evidence at the trial. Furthermore, identification of the assailant was never in issue; the complainant was long familiar with defendant. Defendant’s only defense at trial was an attack on the credibility of the complaining witness’ version of the events.
What is significant is complainant’s reply to questioning that she did not have sexual relations with anyone else the night of the incident. If tests of the semen stains on her clothing and on the swabs taken in a vaginal inspection prove not to belong to defendant, her credibility would have been considerably weakened. Whether the jury would have believed her version of events thereafter is seriously open to question.
There exists a reasonable probability the jury would not have credited the rest of her story as well. Accordingly, if defendant can demonstrate the continued availability for testing of the items described, and there is sufficient material to conduct the test, the court will order such testing at defendant’s expense or, upon proper proof of indigency, require the State to pay for the test.
This portion of defendant’s motion is, therefore, denied with leave to renew upon a proper demonstration of the possibility of DNA testing of the semen stains introduced into evidence at trial.
As for the request to analyze the photograph of the victim submitted in evidence, this too amounts to a demand for further discovery after the verdict. As detailed above, discovery in a criminal proceeding is entirely governed by statute (People v Copicotto, 50 NY2d, supra, at 225; CPL art 240), and there is no statutory basis for such postconviction discovery (People v Brown, 162 Misc 2d 555, supra; People v Callace, 151 Misc 2d 464, supra). Furthermore, this request is based on speculation and is unsupported by any sworn allegation. Also, *998 this claim could have been raised on prior motion and could have been the subject of an appeal (People v Skinner, 154 AD2d 216, 221).
The discovery request is denied.
The claim of error in the prosecutor’s summation is based on the trial record. In fact, it was raised on appeal (People v Washpon, 134 AD2d 384, supra) as well as in previous CPL article 440 motions. It is improper to raise it now (People v Rossney, 186 AD2d 926; People v Purcell, 160 AD2d 899, 900; People v Skinner, supra, 154 AD2d, at 221).
Finally, the issue of defendant’s status as a persistent felony offender, based in part on his conviction after a now-contested plea, was fully adjudicated at the sentencing hearing. The court declines to reexamine that determination (CPL 440.20 [3]).
The motion is denied with leave to renew if defendant demonstrates the feasibility of DNA testing of the semen stains, in accordance with the newly enacted CPL 440.30 (1-a).