[640 NYS2d 908]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAE T. KELLAR, Appellant.

Third Department, April 11, 1996

APPEARANCES OF COUNSEL

*John T. Casey, Jr.,* Albany, for appellant.

*Mary O. Donohue, District Attorney* of Rensselaer County, Troy *(Bruce E. Knoll* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, J.

In June 1989 defendant was indicted for various counts of rape, sodomy and sexual abuse as the result of a May 29, 1989 incident in which, a jury ultimately determined, defendant subjected a 16-year-old female victim to forcible sexual intercourse. In his trial testimony, defendant acknowledged his participation in the encounter, but insisted that his sexual activity with the victim was wholly consensual and did not involve sexual intercourse.

Prosecution evidence showed that the victim was examined by a physician shortly after the incident and that a "rape kit" was prepared and the various specimens analyzed by the State Police crime laboratory. The most noteworthy findings revealed the existence of two dead sperm in a sample of the victim's vaginal secretions and dried secretions outside of the victim's vagina that were found to be consistent with semen. Neither the People nor defendant had the sperm subjected to DNA analysis. Although the presence of semen and sperm led the People's expert to opine that the victim had engaged in sexual intercourse within "the last several hours" prior to the examination, the witness acknowledged on cross-examination that the sperm could have been the product of an act of intercourse that took place as long as three days prior to the examination. In addition, it was established that the victim had told the examining physician that defendant did not ejaculate during the act of forcible intercourse. Finally, when asked whether defendant said anything when he had his penis inside her, the victim responded, "He said, 'I know you want it, you little slut.' and I was, like, 'No, I don't.' I told him I was a virgin and that I was waiting."

On direct appeal from defendant's conviction of rape in the first degree, sexual abuse in the first degree and rape in the third degree, defendant advanced the argument that, in view

of the victim's testimony that she was a virgin, County Court committed reversible error in excluding evidence of her prior sexual history (*see*, CPL 60.42 [3]). Recognizing that the victim did not state that she was a virgin but merely "testified that she told defendant during the attack that she was a virgin", we rejected the argument (174 AD2d 848, 849, *lv denied* 78 NY2d 1128). On that appeal, defendant first raised but then withdrew the contention that County Court erred in admitting evidence of sperm found in the victim's body without a proper foundation (*supra*).

Subsequently, defendant made an unsuccessful motion in County Court to vacate his convictions pursuant to CPL 440.10 on the ground of, *inter alia*, newly discovered evidence and ineffective assistance of counsel. On appeal from County Court's order denying the motion, this Court found that "[d]efendant's characterization of his request for DNA testing under the rubric of 'newly discovered evidence' [was] flawed" (199 AD2d 703, *lv denied* 83 NY2d 854) because the presence of sperm and the possibility of DNA testing was fully known to defendant and its use explored by him and by his counsel prior to trial (*supra*). We also concluded that, by failing to raise the contention on direct appeal, defendant waived the claim that he had been denied effective assistance by virtue of trial counsel's failure to have DNA testing performed (*supra*).

The factual background thus stated, we now turn to defendant's current application for DNA testing of the sample containing the sperm cells, based on the Legislature's 1994 addition of a new CPL 440.30 (1-a) (L 1994, ch 737). By its literal terms, that statutory provision would appear to require that the motion be granted upon a showing "that if a DNA test had been conducted on such evidence, and if the results had been admitted in the trial resulting in the judgment, there exists a reasonable probability that the verdict would have been more favorable to the defendant" (CPL 440.30 [1-a]). In support of the motion and on this appeal from County Court's order denying it, defendant contends, first, that he and his wife repeatedly demanded that defendant's trial counsel arrange for DNA testing of the sample but that the counsel first recommended that they wait and see if the prosecution would itself have the testing performed and then incorrectly stated that, because the sample had not been refrigerated, it could not be DNA coded. On the critical issue of the probability of a more favorable verdict had the DNA testing been performed and the result admitted at trial, it is defendant's contention that, because of

the victim's testimony that she was a virgin prior to the incident, which, although false, was left unrefuted, the jury was left with no alternative but to conclude that defendant was the source of the sperm found in the victim's vagina. Thus, the argument concludes, DNA evidence is pivotal to defendant's case—its absence compelled the jury's conclusion that defendant and the victim engaged in sexual intercourse, whereas its presence would conclusively establish defendant's innocence.

We are not persuaded. We view the allegations in support of defendant's application as nothing more than a repackaging of contentions that were advanced and found unavailing on the prior appeals. Initially, as set forth above, this Court has already determined that the victim did not testify that she was a virgin and that defendant's proffered evidence concerning her prior sexual history was lacking in probative value (174 AD2d 848, 849, *supra*). Further, the present allegation that the People repeatedly referred to the sperm cells as evidence of defendant's penetration of the victim lacks support in the record currently before us. As already stated, the People's witnesses candidly acknowledged their inability to connect defendant with the sperm, which could have been deposited up to three days prior to defendant's contact with the victim, and defendant draws our attention to no occasion where the People mentioned the sperm in their summation. In sharp contrast, it appears that defendant took great tactical advantage of the presence of the sperm, the People's failure to connect it to defendant and the evidence that defendant did not ejaculate as a foundation for the question posed to the jury in defendant's summation, "Was it * * * the little slut or was it * * * the virgin who was there in the woods sometime around 9:30 that night last May 29?"

Based upon our review of the evidence, we conclude that, although a test result identifying defendant as the source of the sperm found in the victim would conclusively establish his guilt, a negative result could establish only that the victim had intercourse with a male other than defendant within a period of approximately three days prior to the incident. In our view, such evidence would be probative of little more than the victim's prior sexual activity. Under the circumstances, County Court did not err in its finding that defendant failed to show that there exists a reasonable probability that the verdict would have been more favorable if DNA testing had been performed (*see, People v De Oliveira*, — AD2d —, 1996 NY Slip Op 00250 [3d Dept, Jan. 4, 1996]).

As a final matter, even if we concluded that DNA testing may have affected the outcome of the trial, we would affirm

County Court's order on the basis of our prior determination that the presence of sperm and the possibility of DNA testing was fully known to defendant and its use explored by him with his counsel in advance of trial and, further, that defendant waived his right to claim ineffective assistance of counsel in that connection (199 AD2d 703, *supra*; *see*, CPL 440.10 [1] [g]). We do not read CPL 440.30 (1-a) as granting a second opportunity to those who have failed to take advantage of available DNA testing prior to trial (*see*, *Matter of Washpon v New York State Dist. Attorney, Kings County*, 164 Misc 2d 991, 993-994; *People v Brown*, 162 Misc 2d 555; *cf.*, Preiser, 1994 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 440.30, 1996 Pocket Part, at 71). We note that, while the new subdivision (1-a) was added to CPL 440.30, which details the *procedure* to be followed in connection with a motion to vacate judgment, CPL 440.10 (1), which sets forth the actual *grounds* for the application, was left unchanged. Reading the two sections in pari materia (*see*, McKinney's Cons Laws of NY, Book 1, Statutes § 97) and further applying the rule that the "[l]anguage of a statute is not to be accepted in all of its sheer literalness without regard to the object which the statute was designed to accomplish" (McKinney's Cons Laws of NY, Book 1, Statutes § 96, at 209), we conclude that in enacting CPL 440.30 (1-a), the Legislature did not intend to abrogate the "due diligence" requirement with regard to this one species of newly discovered evidence (CPL 440.10 [1] [g]).

CARDONA, P. J., WHITE, PETERS and SPAIN, JJ., concur.

Ordered that the order is affirmed.