854 So.2d 1195 (2002)
Barry DOWDELL
v.
STATE of Alabama.
CR-01-0610.
Court of Criminal Appeals of Alabama.
June 28, 2002.
Rehearing Denied August 9, 2002.
Barry Dowdell, pro se.
William H. Pryor, Jr., atty. gen., and Daniel W. Madison, asst. atty. gen., for appellee.
WISE, Judge.
The appellant, Barry Dowdell, appeals from the circuit court's denial of his petition for postconviction relief, filed pursuant to Rule 32, Ala.R.Crim.P., in which he attacked his 1986 conviction for first-degree rape and the resulting sentence of 18 years' imprisonment. As best we are able to determine from the record, Dowdell's conviction was based on his guilty plea to the charge of rape in the first degree. There is some conflict in the record concerning *1196 whether Dowdell appealed from this conviction.[1]
On June 6, 2001, Dowdell filed a Rule 32, Ala.R.Crim.P., petition for postconviction relief alleging that he was entitled to relief from his rape conviction based on newly discovered evidence that he says establishes his innocence of that crime. In fact, the newly discovered evidence was not yet in existence, since Dowdell's petition sought DNA testing, the results of which, he alleged, would establish his innocence. Dowdell also alleged that he was entitled to relief based on the fact that the Alabama Constitution of 1901 was a racist document adopted to disenfranchise African-Americans; therefore, he argues, any conviction based on laws enacted under the authority of the 1901 Constitution was void and due to be set aside.
On November 1, 2001, the State filed a motion to dismiss Dowdell's petition, claiming that the petition was time-barred under Rule 32.2(c), and that it was procedurally barred under Rule 32.2(b) as a successive petition. Without waiving these procedural bars, the State also alleged that Dowdell's claims lacked merit and requested that the petition be summarily denied without an evidentiary hearing. On November 29, 2001, the circuit court entered an order denying Dowdell relief because the court determined that the petition was time-barred under Rule 32.2(c) and that it was procedurally barred under Rule 32.2(a)(3), because his claims could have been raised at trial but were not. Dowdell filed a notice of appeal on December 6, 2001. This appeal followed.
Dowdell contends that in light of the grounds raised in his petition, the circuit court erred in summarily denying his petition. We disagree.
Dowdell's claim that the 1901 Constitution is unconstitutional is a nonjurisdictional claim, and is thus subject to the procedural bars set out in Rule 32.2. See Nicks v. State, 783 So.2d 895 (Ala.Crim. App.1999), cert. quashed, 783 So.2d 926 (Ala.2000). Dowdell was convicted in 1986; his conviction became final 42 days after he was sentenced on September 26, 1986. The effective date for Rule 20, Ala.R.Crim. P.Temp., the predecessor to Rule 32, Ala. R.Crim.P., was April 1, 1987. Temporary Rule 20 set out a two-year limitations period for filing a petition for postconviction relief. The comments to that rule provided that defendants convicted before April 1, 1987, would have two years from the effective date of the rule to file their petitions. Thus, Dowdell had until April 1, 1989, to timely file a petition for postconviction relief based on his claim that the *1197 Alabama Constitution of 1901 was unconstitutional because it had been adopted to disenfranchise African-Americans. Because he failed to do so, this claim is barred by the two-year limitations period set out in Rule 32.2(c). Thus, the circuit court correctly denied relief based on this ground.
Dowdell also alleges that DNA testing will establish his innocence of the crime to which he pleaded guilty in 1986. Dowdell alleges that he is entitled to raise this claim outside the two-year limitations period because he only recently learned of this method of establishing his innocence. Rule 32.1, Ala.R.Crim.P., provides, in pertinent part:
"Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:
"....
"(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
"(1) The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
"(2) The facts are not merely cumulative to other facts that were known;
"(3) The facts do not merely amount to impeachment evidence;
"(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
"(5) The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received."
While Rule 32.2(c) sets out a general two-year limitation period for filing petitions for postconviction relief, it provides the following exception for claims asserting newly discovered evidence:
"The court shall not entertain a petition based on the grounds specified in Rule 32.1(e) unless the petition is filed within the applicable two-year period specified in the first sentence of this section, or within six (6) months after the discovery of the newly discovered material facts, whichever is later; provided, however, that the two-year period during which a petition may be brought shall in no case be deemed to have begun to run before the effective date of the precursor of this rule, i.e., April 1, 1987."
Alabama courts have recognized the admissibility of DNA testing since 1991. The Alabama Supreme Court, in Ex parte Perry, 586 So.2d 242 (Ala.1991), recognized the existence of a generally accepted theory in the scientific community that supports the conclusion that DNA forensic testing could produce reliable results as to "matching" evidence, and set out the evidentiary predicate to be used in determining the admissibility of DNA evidence. The decision in Ex parte Perry was released on April 19, 1991. Since 1991, Alabama courts have addressed the admissibility of DNA testing on numerous occasions and in a variety of appellate opinions. Moreover, DNA evidence was widely publicized during the 1990s in a number of high-profile criminal cases as a method of establishing a defendant's innocence. Given these circumstances, we do not find credible Dowdell's claim that he only learned of the existence of DNA *1198 testing as a method to prove his innocence within six months of filing his June 2001 petition. Certainly, Dowdell should have become aware of the existence of DNA testing before more than 10 years had passed since the Alabama Supreme Court recognized the existence of DNA forensic testing. Had Dowdell filed his petition within a reasonable time of the decision in Ex parte Perry, his claim that he had only recently learned about DNA testing would have been credible and we would have considered the merits of his petition alleging newly discovered evidence. However, because Dowdell waited more than 10 years to file his petition, the trial court correctly determined that his claim was time-barred by the provisions of Rule 32.2(c).
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, J., concur. SHAW, J., concurs in the result, with opinion. BASCHAB, J., dissents, with opinion.
SHAW, Judge, concurring in the result.
I concur to affirm the summary denial of Dowdell's Rule 32, Ala.R.Crim.P., petition for postconviction relief, although not for the reasons stated by the majority.
Like Judge Baschab, who filed a dissenting opinion in this case, I fully recognize the need for, and the importance of, postconviction DNA testing in certain cases especially in capital-murder cases in which the death penalty has been imposed.
"A criminal trial is not a lottery, a spin of the roulette wheel or a throw of the dice. The orderly processing of cases through the court is an important value, but it is not the end in itself. It is only the method by which we attempt to achieve the ultimate purpose of the criminal justice systemthe fair conviction of the guilty and the protection of the innocent. That is what our constitutional guarantees are all about. Our system fails every time an innocent person is convicted, no matter how meticulously the procedural requirements governing criminal trials are followed."
New Jersey v. Thomas, 245 N.J.Super. 428, 435, 586 A.2d 250, 253-54 (1991) (discussing postconviction requests for DNA testing). In Dabbs v. Vergari, 149 Misc.2d 844, 850, 570 N.Y.S.2d 765, 769 (Sup.Ct. 1990) (also discussing postconviction requests for DNA testing), the court noted:
"Consistent with society's `overriding concern with the justice of the finding of guilt' (United States v. Agurs, 427 U.S. [97,] 112 [(1976)]), the courts, as well as the prosecution, must be vigilant to correct a mistake. `It is the State that tries a man, and it is the State that must insure that the trial is fair' (Moore v. Illinois, 408 U.S. 786, 810 [(1972)] [Marshall, J., concurring in part and dissenting in part]). Put another way, `[t]he State's obligation is not to convict, but to see that, so far as possible, truth emerges' (Giles v. Maryland, 386 U.S. 66, 98 [(1967)] [Fortas, J., concurring]). `When evidence favorable to the defendant is known to exist, disclosure only enhances the quest for truth; it takes no direct toll on that inquiry' (United States v. Bagley, 473 U.S. [667,] 692-693 [(1985)] [Marshall, J., dissenting])."
And in Ex parte Frazier, 562 So.2d 560, 565 (Ala.1989), the Alabama Supreme Court, quoting Estes v. Texas, 381 U.S. 532, 540, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), noted:
"`Court proceedings are held for the solemn purpose of endeavoring to ascertain *1199 the truth which is the sine qua non of a fair trial. Over the centuries Anglo-American courts have devised careful safeguards by rule and otherwise to protect and facilitate the performance of this high function.'"
Legislatures and courts have only recently begun to fully appreciate and address the need for specific procedures and standards for resolving postconviction requests for DNA testing. Across the country, existing procedures for a postconviction challenge to a conviction and sentence have generally not kept pace with the technological advances in DNA testing. There is, indeed, little guiding precedent. See, e.g., Development in the LawConfronting the New Challenges of Scientific Evidence, 108 Harv. L.Rev. 1481 (1995); Jennifer Boemer, In the Interest of Justice: Granting Post-Conviction Deoxyribonucleic Acid (DNA) Testing to Inmates, 27 Wm. Mitchell L.Rev.1971 (2001); Karen Christian, "And the DNA Shall Set You Free": Issues Surrounding Postconviction DNA Evidence and the Pursuit of Innocence, 62 Ohio St. L.J. 1195 (2001).
The lack of existing procedures and precedent are no more apparent than here in Alabama. Judge Baschab correctly recognizes this and then strongly urges the Legislature to pass statutes and/or the Alabama Supreme Court to establish rules that allow for, and set parameters for, postconviction DNA testing. I join Judge Baschab in that respect, and I call upon either or both of those bodies to study this important issue carefully and to implement procedures governing postconviction DNA testing in Alabama. I believe that the failure to implement such procedures may raise serious due-process issues in certain cases, including capital-murder cases in which the death penalty has been imposed, and may necessitate federal court intervention in certain cases.
However, I must respectfully disagree with the proposition that this Court has the authority to create a new procedure for trial courts to follow in considering requests for postconviction DNA testing a procedure that anticipates, but is totally independent of, a postconviction challenge pursuant to Rule 32, Ala.R.Crim.P.[2] Although blind adherence to procedural rules should not necessarily take precedence over the overarching search for the truth, the inescapable fact remains that this Court is bound by the opinions and rules promulgated by the Alabama Supreme Court. See § 12-3-16, Ala.Code 1975; McGriff v. State, [Ms. CR-97-0179, September 29, 2000] ___ So.2d ___ (Ala.Crim. App.2000).
Rule 32.4, Ala.R.Crim.P., provides:
"A proceeding under this rule displaces all post-trial remedies except post-trial motions under Rule 24 and appeal. Any other post-conviction petition seeking relief from a conviction or sentence shall be treated as a proceeding under this rule. Proceedings under this rule shall be governed by the Rules of Criminal Procedure, except that the trial court in its sole discretion may allow the taking of depositions for discovery or for use at trial."
By its plain language, Rule 32 displaces all postconviction petitions seeking relief from a conviction or a sentence. A proceeding under Rule 32 is the sole posttrial remedy available in Alabama, with the exception of posttrial motions under Rule 24 and appeal, neither of which is an option for Dowdell. See Cayson v. State, 778 So.2d 261 (Ala.Crim.App.2000). Only the Legislature and the Alabama Supreme Court, *1200 by virtue of its constitutional rule-making power, see Ala. Const. of 1901, Amend. No. 328, § 6.11, have the authority to change the procedure and requirements of Rule 32.[3]
Because the statute of limitations set out in Rule 32.2(c) bars Dowdell from possibly challenging his conviction on the constitutional grounds set out in Rule 32.1(a), the only ground upon which Dowdell could conceivably seek relief, and upon which he has sought relief in this case, is set out in Rule 32.1(e), which provides:
"Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
"(1) The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceedings and could not have been discovered by any of those times through the exercise of reasonable diligence;
"(2) The facts are not merely cumulative to other facts that were known;
"(3) The facts do not merely amount to impeachment evidence;
"(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
"(5) The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received."
(Emphasis added.) As the emphasized portion of the rule indicates, this ground, properly stated, requires a petitioner to allege the existence of facts (supported by evidence newly discovered) that meet the five conditions enumerated therein. In addition, the six-month limitations period provided in Rule 32.2(c) contemplates that a petition alleging a Rule 32.1(e) ground will be filed "within six (6) months after the discovery of the newly discovered material facts." Therefore, the only way Dowdell can mount a Rule 32 challenge to his conviction, based on the alleged existence of newly discovered exculpatory DNA evidence, would be to first obtain postconviction discovery of that evidence, i.e., DNA test results.
The dispositive case in Alabama concerning postconviction discovery is Ex parte Land, 775 So.2d 847 (Ala.2000). In that case, the Alabama Supreme Court ordered certain discovery in connection with the petitioner's claim of ineffective assistance of counsel, filed pursuant to Rule 32. Referring to this Court's opinion in Ex parte Land, 775 So.2d 840 (Ala. Crim.App.1998), the Court stated, in pertinent part:
"We agree with the Court of Criminal Appeals that `good cause' is the appropriate standard by which to judge postconviction discovery motions. In fact, other courts have adopted a similar `good-cause' or `good-reason' standard for the postconviction discovery process. See [State v. Marshall, 148 N.J. 89, 690 A.2d 1, cert denied, 522 U.S. 850 *1201 (1997) ]; State v. Lewis, 656 So.2d 1248 (Fla.1994); People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postconviction discovery process. See Fitzgerald, supra, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.E.2d at 135. We also agree that New Jersey's Marshall case provides a good working framework for reviewing discovery motions and orders in capital cases. In addition, we are bound by our own rule that `an evidentiary hearing must be held on a [petition for postconviction relief] which is meritorious on its face, i.e., one which contains matters and allegations (such as ineffective assistance of counsel) which, if true, entitle the petitioner to relief.' Ex parte Boatwright, 471 So.2d 1257, 1258 (Ala.1985).
"We emphasize that this holding that postconviction discovery motions are to be judged by a good-cause standarddoes not automatically allow discovery under Rule 32, Ala.R.Crim.P., and that it does not expand the discovery procedures within Rule 32.4. Accord Lewis, supra, 656 So.2d at 1250, wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida's rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner's showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to `fish' through official files and that it `is not a device for investigating possible claims, but a means of vindicating actual claims.' People v. Gonzalez, 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf. Porter v. Wainwright, 805 F.2d 930, 933 (11th Cir.1986) (`a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief'), cert. denied, 482 U.S. 918, 919, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987). Furthermore, a petitioner seeking postconviction discovery also must meet the requirements of Rule 32.6(b), Ala.R.Crim.P., which states:
"`The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.'
"That having been said, we must determine whether Land presented the trial court with good cause for ordering the requested discovery. To do that, we must examine Land's basis for the relief requested in his postconviction petition and determine whether his claims are facially meritorious. Only after making that examination and determination can we determine whether Land has shown good cause."
775 So.2d at 852-53 (footnote omitted).
It is apparent from a reading of both this Court's opinion and the Supreme Court's opinion in Ex parte Land, that the Supreme Court recognized that in the absence of authorization in the form of a court rule, a statute, or constitutional mandate, trial courts have the inherent, but limited, authority to order postconviction *1202 discovery where justice so requires. However, it is also apparent from a reading of the Supreme Court's opinion in Ex parte Land that the Supreme Court has restricted postconviction discovery in Alabama to those situations where the discovery of evidence is necessary to support a facially valid Rule 32 ground. Stated differently, a petitioner must file a Rule 32 petition and clearly and specifically allege facts that, if proved, would entitle him or her to the relief sought before he or she can seek discovery in support of the ground alleged. The Supreme Court stated that a petitioner is not entitled to "fish" for evidence for the purpose of investigating a possible claim, and it cautioned that postconviction discovery was to be available only as a means of "vindicating actual claims." 775 So.2d at 852.
Therefore, under existing Alabama caselaw and court rules, Dowdell is subject to a true "catch 22." Contrary to the majority's conclusion that Dowdell's claim could have been considered had it been raised within a reasonable time after the Alabama Supreme Court's opinion in Ex parte Perry, 586 So.2d 242 (Ala.1991), I believe that no matter when Dowdell filed his claim, he could not have possibly stated a proper claim under Rule 32.1(e), because he had no DNA test results upon which to base such a claim for relief. Yet he also could not discover the evidence he needs, i.e., the DNA test results, because without those results he could not state a facially valid claim under Rule 32.1(e). In short, there is no mechanism available for Dowdell to challenge his conviction based upon allegedly exculpatory DNA test results.
I recognize that some courts have fashioned various theories for granting requests for DNA testing, e.g., treating such a request as being made pursuant to a possible motion for a new trial based on newly discovered evidence or pursuant to a possible habeas petition; and treating such a request as a motion to enforce an obligation under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to reveal exculpatory evidence to the defense. See Development in the LawConfronting the New Challenges of Scientific Evidence, supra; Boemer, supra; Christian, supra; see also Mebane v. State, 21 Kan. App.2d 533, 902 P.2d 494 (1995), and the cases cited therein. However, in light of the plain language of Rule 32 and the Alabama Supreme Court's holding in Ex parte Land, I cannot conclude that this Court can create a new procedure for addressing requests for DNA testing based upon these theories. This issue must, in my view, be left to the Legislature and/or the Alabama Supreme Court.
The real issues for those bodies, as I see them, concern (1) the exact nature of the proceeding that should be created (a proceeding commenced by the filing of a separate petition for postconviction discovery, whereby the inherent authority of a trial court to order such discovery would be expanded, or a discovery proceeding authorized by an amendment to Rule 32); (2) the criteria that would be used in determining whether a "prima facie" showing has been made, or whether "good cause" has been shown, to warrant DNA testing; and (3) whether the appeal process should be expedited in some manner.
The procedure advocated by Judge Baschab could, and, in my opinion, would, greatly impact the criminal justice system in Alabama, especially in the area of capital litigation. The importance of the concept of finality in criminal cases cannot be overstated, and the need to conserve judicial resources by not opening the floodgates to meritless and costly claims is also an important consideration. The people of Alabama have a vested interest in the swift and efficient administration of criminal justice. *1203 Of course, the primary, and ultimately the overriding, concern for society as a whole, and for appellate judges in particular, is that justice actually be achieved in every case. In Ex parte Frazier, supra, the Supreme Court, in adopting new standards by which to judge new-trial motions alleging false testimony, aptly stated:
"We must not let our awareness of the criminal milieu in which Frazier moved stain the `processes of law.' Frazier is entitled to a fair trial. Justice Cardozo wrote in The Nature of the Judicial Process (1921) at 35, that `the sordid controversies of the litigants are the stuff out of which great and shining truths will ultimately be shaped.' The one `great and shining truth' that has been shaped from this sordid controversy is that the courts of this state shall strive always to ensure fair treatment to all those who, because of their alleged criminal acts, stand to lose their lives or liberty, regardless of who they may be and regardless of what their alleged offenses may be. Our Constitutions require, and we will insist on, no less."
562 So.2d at 572.
Therefore, I believe that procedures and standards must be adopted in this area of the lawprocedures and standards that strike the proper balance between these competing concerns. Unfortunately, I cannot find any sound legal basis for concluding that this Court has the authority to create those new procedures and standards.
Because I would affirm the summary denial of the appellant's petition, although not for the reasons stated by the majority, I concur in the result only.
BASCHAB, Judge, dissenting.
Because I believe the circuit court is in a better position than this court to evaluate the validity of a request for post-conviction DNA testing, I must respectfully dissent.
The appellant filed Rule 32 petitions, challenging his convictions for first-degree rape and second-degree robbery. He also filed motions requesting that the court order the release of the victim's medical records; "declare him indigent for the purpose of obtaining `Rape Kit and DNA test' at the State's expense"; order the State to release "the rape kits and medical reports that contain the DNA and other medical evidence of the alleged rape victims and the DNA reports of the alleged victims"; and "order DNA testing of him to specifically ascertain if it does in fact match the specimen found on the victim." (C.R.51, 52, 55.) The circuit court summarily denied the petitions, but apparently did not specifically rule on his discovery motions.
The appellant argues that the circuit court "abused [its] discretion by not granting him post-conviction discovery." (Appellant's brief at p. 4.) In his petitions, he asserted that he "is innocent of the charge of rape in the first degree" and that he "is entitled to the DNA testing to exonerate him [on] the charge of rape in the first degree." (C.R.25, 105.) He further asserted "that he should be allow[ed] the testing first and after all of the results are made final then he should be afforded the opportunity to present his newly discovered evidence at an evidentiary hearing on this claim of actually innocent." (C.R.27, 107.)
Alabama has not established a procedure for defendants to use to request post-conviction DNA testing. Nevertheless, this court, the Alabama Supreme Court, and the Legislature should recognize the need for, and the importance of, post-conviction DNA testing in certain cases. Therefore, I strongly urge the Legislature to pass statutes and/or the Alabama Supreme Court to establish rules that allow *1204 for, and set parameters for, post-conviction DNA testing.[4] In this regard, I suggest that those bodies consider adopting the guidelines set forth below.
A person who has been convicted of an offense in the State of Alabama should be allowed to file a motion for post-conviction DNA testing. A petitioner who requests post-conviction DNA testing should be required to make a prima facie showing that:
1) he has exercised due diligence and has timely presented his request for testing;
2) the evidence to be tested is still in existence and is in such a condition that DNA testing may be conducted;
3) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, degraded, contaminated, replaced, or altered in any material aspect;
4) the evidence was not previously subjected to DNA testing or was not subjected to the type of DNA testing that is now requested and the new testing may resolve an issue not resolved by the prior testing;
5) the requested testing uses a scientifically valid technique and the results of such testing would likely be admissible at trial;
6) the evidence to be tested is material to the issue of the petitioner's identity as the perpetrator of, or accomplice to, the offense for which he was convicted; and
7) the identity of the petitioner as the perpetrator of the offense was at issue during the petitioner's trial.
When a petitioner requests post-conviction DNA testing, the circuit court should allow the State to respond to the request. It should also conduct a hearing on the request if it determines that such a hearing is necessary. Thereafter, the circuit court should make specific, written findings of fact as to whether a petitioner has or has not made a prima facie showing that post-conviction DNA testing should be ordered. Once a petitioner has made such a prima facie showing, the circuit court should make additional specific, written findings of fact as to whether the result of the trial or sentencing probably would have been more favorable to the petitioner if the results of the testing had been known at either of those times. If it determines that the result of the trial or sentencing probably would have been more favorable to the petitioner, then the court should order post-conviction DNA testing on such terms and under such conditions as it deems to be appropriate. Such terms and conditions should include, but should not be limited to, safeguards that ensure the integrity of the evidence and the testing process. After the testing has been completed, the petitioner should be allowed to seek relief pursuant to Rule 32, Ala. R.Crim. P.
*1205 For the above-stated reasons, we should remand this case to the circuit court with instructions that that court consider the appellant's requests relating to post-conviction DNA testing applying the guidelines set forth in this dissent. Accordingly, I respectfully dissent.
NOTES
[1] Dowdell states in his Rule 32 petition that he pleaded guilty and that he did not appeal his conviction. The case action summary contains a notation that Dowdell pleaded guilty to rape and robbery on August 14, 1986, and that he was sentenced on September 26, 1986. There is no indication that a notice of appeal was filed within 42 days of sentencing. The circuit court and the State aver that Dowdell appealed this conviction and that this Court affirmed Dowdell's convictions on December 5, 1989. We have reviewed our records, see Hull v. State, 607 So.2d 369, 371 (Ala.Crim.App.1992) (this Court may take judicial notice of its own records), and we find no record of any direct appeal. We do find, however, that on December 5, 1989, the date this Court is alleged to have affirmed Dowdell's rape conviction, we issued a certificate of judgment resulting from our November 17, 1989, affirmance of the circuit court's denial of Dowdell's Rule 20, Ala.R.Crim.P.Temp., petition for postconviction relief. See Dowdell v. State, (No. 6 Div. 237) 555 So.2d 1198 (Ala.Crim.App.1989). The record also appears to indicate that Dowdell filed another petition for postconviction relief in 1999, and that that petition was denied. Based on a review of our records, we conclude that no appeal was taken from the denial of the 1999 petition.
[2] Judge Baschab states that "[a]fter the testing has been completed, the petitioner should be allowed to seek relief pursuant to Rule 32, Ala.R.Crim.P." 854 So.2d at 1204.
[3] Section 6.11 provides:

"The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts or venue of actions therein; and provided, further, that the right of trial by jury as at common law and declared by section 11 of the Constitution of Alabama 1901 shall be preserved to the parties inviolate. These rules may be changed by a general act of statewide application."
[4] In so doing, those bodies should consider the following statutes and rules: Ariz.Rev. Stat. Ann. § 13-4240 (West 2000); Cal.Penal Code § 1405 (West 2000); Del.Code Ann. tit. 11, § 4504 (2000); Fla. Stat. ch. 925.11 (2001); 725 Ill. Comp. Stat. 5/116-3 (2000); Ind.Code §§ 35-38-7-1 through -19 (2001); Me.Rev.Stat. Ann. tit. 15, §§ 2136-2138 (West 2001); Mich. Comp. Laws § 770.16 (2001); Minn.Stat. §§ 590.01-590.06 (2000); 2001 Neb. Laws, L.B. 659 (2001); N.M. Stat. Ann. § 31-1A-1 (Michie 2000); N.Y.Crim. Proc. Law § 440.30 (McKinney 2001); N.C. Gen. Stat. § 15A-268 through -270 (2001); Okla. Stat. tit. 22, § 1371.1 (2000); Okla. Stat. tit. 22, § 1372 (2001); Tenn.Code Ann. § 40-26-106 (2000); Tex.Crim. Proc.Code Ann. §§ 64.01-64.05 (West 2001); Utah Code Ann. §§ 78-35a-301 through -304 (2001); Wash. Rev.Code § 10.73.170 (2000); Rule 3.853, Fla. R.Crim. P.; Rule 29.17, Mo. R.Crim. P.